JEFFREY G. KNOWLES (State Bar No. 129754)
ANDREW SCHALKWYK (State Bar No. 287170)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone: 415.391.4800
Facsimile: 415.989.1663
Email:   ef-jgk@cpdb.com,
          ef-aps@cpdb.com

Attorneys for Plaintiff
Henry Schein, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

|  |  |
|---|---|
| HENRY SCHEIN, INC., | Case No. _____ |
| Plaintiff, | **COMPLAINT** |
| v. | 1. MISAPPROPRIATION OF TRADE SECRETS UNDER 18 U.S.C. § 1836, |
| JENNIFER COOK, | 2. MISAPPROPRIATION OF TRADE SECRETS UNDER CALIFORNIA CIVIL CODE § 3426, *ET SEQ.* |
| Defendant. | 3. BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY |
|  | 4. BREACH OF WRITTEN CONTRACT |
|  | 5. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING |
|  | 6. TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS |
|  | 7. UNFAIR COMPETITION UNDER COMMON LAW AND CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, *ET SEQ.* |
|  | 8. VIOLATION OF CALIFORNIA PENAL CODE § 502 |
|  | Trial Date:      None Set |

10653.002 3464849v1

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

1    Plaintiff, Henry Schein, Inc. ("HSI," "Company" or "Plaintiff"), by and through its

2  undersigned attorneys, for its complaint against defendant Jennifer Cook ("Cook" or "Defendant")

3  alleges as follows:

4                                    **INTRODUCTION**

5        1.      This action is brought to remedy Defendant's disloyal and unlawful conduct in:

6  taking, retaining and misappropriating Plaintiff's property, including Plaintiff's confidential,

7  proprietary, and trade secret information; attempting, while employed by Plaintiff, to divert

8  customers to Plaintiff's competitor, Patterson Dental ("Patterson"); misappropriating Plaintiff's

9  property and confidential information, both prior to and after her abrupt resignation from the

10  Company on May 13, 2016; and breaching her agreements with and obligations to the Company.

11       2.      Defendant was employed by Plaintiff as a Field Sales Consultant and was so

12  employed for eleven years, assigned and working for Henry Schein Dental.  Defendant's job was

13  to project, increase and promote the Company's good will with existing and prospective customers

14  and in the marketplace, and to service, solicit and sell to, the customers and prospective customers

15  assigned to her by Plaintiff.  Unbeknownst to Plaintiff, while Defendant was employed by the

16  Company, and supposedly doing her job, Defendant secretly — and in violation of her legal and

17  contractual obligations to Plaintiff — actively and deceptively misappropriated Plaintiff's

18  confidential and proprietary documents, including trade secrets, and diverted customers to

19  Patterson, where she is now employed.

20       3.      Defendant resigned from Plaintiff's employ at the close of business on May 13,

21  2016.  Prior to her departure, Plaintiff: surreptitiously downloaded and took Plaintiff's trade secret

22  materials – including extensive, confidential analytical material, data and records generated by

23  Plaintiff concerning the customer base assigned by Plaintiff to Defendant; she also attempted to

24  conceal her removal of this confidential material, and solicited HSI customers to become Patterson

25  customers.

26       4.      Plaintiff brings this action for: (1) misappropriation under the Defend Trade Secrets

27  Act ("DTSA"), 18 U.S.C. § 1836; (2) misappropriation under California Civil Code § 3426, et

28  seq.; (3) breach of fiduciary duty and duty of loyalty; (4) breach of written contract; (5) breach of

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

the implied covenant of good faith and fair dealing; (6) tortious interference with contract; (7) tortious interference with prospective economic relations; (8) unfair competition under California Business and Professions Code § 17200, *et seq.*; and (9) violation of California Penal Code § 502.

5.      As of the filing of this Complaint, Defendant has misappropriated and converted, and continues to unlawfully misappropriate and convert, Plaintiff's confidential and proprietary documents, including trade secrets. Plaintiff respectfully seeks remedies against Defendant, including injunctive and monetary relief, damages, lost profits, an accounting, forfeiture of illicit wages and other relief.

### THE PARTIES

6.      Plaintiff HSI is a corporation, organized and existing under the laws of the State of Delaware, with its principal place of business in Melville, New York. Plaintiff is engaged in the business, *inter alia,* of marketing, distributing, and selling supplies, equipment and other healthcare products, to dental, medical and veterinary practitioners and other healthcare professionals and organizations. Henry Schein Dental is a division of Plaintiff, which concentrates on marketing, distribution, and sale of dental supplies, equipment and business solutions to dentists and professional dental offices.

7.      Defendant Jennifer Cook is an individual, residing, on information and belief, in Novato, California. From April 2005 until May 13, 2016, Defendant Cook was an employee of HSI.

### JURISDICTION

8.      This Court has original jurisdiction of this action pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836(c) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the other claims asserted herein, pursuant to 28 U.S.C. § 1367. Further, there is complete diversity and the amount in controversy, on information and belief, exceeds the jurisdictional amount, and thus, this action is also subject to the Court's diversity jurisdiction under 28 U.S.C § 1332.

### ALLEGATIONS APPLICABLE TO ALL CLAIMS

9.      HSI hired Defendant Cook as a Field Sales Consultant ("FSC") with Henry Schein

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

COBLENTZ PATCH DUFFY & BASS LLP

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

1  Dental ("HSD") (then called Sullivan Schein Dental) in April, 2005.  HSI assigned to Cook a

2  group of customers with whom to develop and further the good will of the Company, and whom

3  Defendant was to service, solicit and sell to on behalf of the Company.  The group of customers

4  assigned to Defendant has changed and developed during the time since April 2005.

5         10.     As an employee of HSI, Defendant was obligated, by law and contract, to devote

6  her full and utmost loyalty and good faith to Plaintiff, and was prohibited from engaging in any

7  actions or conduct in violation of these duties, or which competed with, or tended to harm the

8  Plaintiff, and/or which would assist or further the interests of a competitor.

9         11.     HSI and Defendant Cook entered into several written agreements, including: (i) a

10  Confidentiality and Non Solicitation Agreement dated April 30, 2005 (the "Confidentiality

11  Agreement") (Exhibit 1); and (ii) a Letter Agreement dated February 2011, further addressed to

12  protecting HSI's good will and confidential information (the "Letter Agreement") (Exhibit 2).

13  Prior to this, the parties entered into an earlier letter agreement on April 20, 2005 (the "2005 Letter

14  Agreement"), which provided further protection for HSI's confidential information and good will.

15         12.     Both her duties under law, and her agreements with HSI, required that Defendant

16  devote her full loyalty and utmost fidelity to Plaintiff during her employment, and restricted her

17  from stealing Plaintiff's property, misappropriating Plaintiff's trade secrets, confidential

18  information and other property, and from soliciting customers for Plaintiff's competitors while she

19  was employed by Plaintiff.

20  **The Confidentiality Agreement**

21         13.     Pursuant to paragraph 1 of the Confidentiality Agreement, Defendant agreed *inter*

22  *alia,* that she would:

23          keep confidential and [would] not disclose to others, either during or
        subsequent to [her] employment, any confidential information, trade

24          secrets, business information, software-related information, research
        or development information, technical or product information,

25          pricing, costing, customer lists, supplier lists, marketing or sales
        information, pending acquisitions, business plans or other financial

26          or any other matter which [she] learned through [her] association
        with the Company (collectively "confidential information"). . .

27         14.     Significantly, Defendant also agreed in paragraph 1 of the Confidentiality

28

Agreement, that "[she] would not make copies, abstracts or summaries of any Company documents or information or any duplicates of any discs, tapes or other forms of data storage or information."

15.     Pursuant to paragraph 2 of the Confidentiality Agreement, Defendant agreed *inter alia,* that:

> upon [her] separation from the Company for any reason, [she] would return to the Company all notebooks, memoranda, personal notes, software, hardware, other documents, discs, tapes, material or property of the Company and all other confidential information, and all copies thereof, which are in [her] possession.

16.     Pursuant to paragraph 5 of the Confidentiality Agreement, Defendant agreed *inter alia,* that:

> in the event of breach or threatened breach of any provisions of this Agreement, the Company's remedies at law would be inadequate, and the Company shall be entitled to an injunction to enforce such provisions (without any bond or other security being required). . .

### The Letter Agreement

17.     Pursuant to paragraph 1 of the Letter Agreement, Defendant agreed to, *inter alia,* "use her best efforts" on behalf of HSI to "solicit, sell to and service all customers assigned to her by HSD" and to "attempt to project HSD's name, reputation and good will, to new, prospective and existing HSD customers located within the geographic territory in which her assigned customers are located."

18.     Pursuant to paragraph 2 of the Letter Agreement, Defendant agreed, *inter alia,* to "hold in strictest confidence any and all confidential information within her knowledge . . . concerning HSD, and/or concerning the products, processes, services, business, suppliers and customers of HSD."  Further pursuant to paragraph 2 of the Letter Agreement, confidential information is deemed to include, without limitation:

> financial information, sales and distribution information, the discounted prices at which products may be offered to customers; credit profiles, the sales plans which any customer is party to, other terms of such sales plans, the fact that a particular customer is or is not on a sales plan; the terms of any agreement or arrangement to which Company is or was a party, and technical information, as well as any other information that Representative learns in connection with her employ with the Company, all to the extent that such

CoBLENTZ PATCH DuFFY & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

information is not readily available to the public, or is not readily and properly available to, others in trade.

19. Pursuant to paragraph 7 of the Letter Agreement, Defendant agreed *inter alia*:

> that upon termination of [her] employment for any reason, [she] [would] immediately deliver to the Company, all of the Company's property, reports, papers, books, manuals, lists, correspondence, and documents, Confidential Information, and proprietary information, as well as any other materials which may involve the Company's business, together with all copies thereof (including electronic copies or files), irrespective of whether [she] created the same or was involved with the same; [Cook] will neither copy nor take any such material upon leaving Company's employ.

## *Plaintiff's Confidential, Proprietary, and Trade Secret Information*

### A.     Company Confidential Data Used by Cook

20. As an FSC, Defendant had access to substantial confidential HSI information related to HSI's customers, products, margins, profit percentages and markets, particularly concerning those customers assigned to her, and the products those customers purchased. HSI, as part of doing business, generates, develops, compiles and analyzes, substantial information concerning each customer, including their product preferences, buying patterns, credit profiles, customer invoices and pricing, customer practices, margins and profit variances, and the exact amount and type of business transactions with each customer. HSI then makes this information available to its FSCs to enable them to effectively service customers, address customer needs and offer additional products at suitable prices. HSI spends substantial amounts of money in obtaining, compiling, developing and analyzing this data and information, and then in making it available, together with extensive analysis, for use by its sales force, including by means of advanced analytical tools and computer programs.

21. The data generated, compiled, analyzed and maintained by HSI, and the associated analytic tools, provide each FSC with extensive, confidential Company data and analysis on each customer and product they deal with. This includes the Company's confidential data and analysis on gross profit by product and by customer, gross profit percentages, gross profit variance, historical invoices, product and payment data, credit limits, customer purchasing trends, specific product preferences and pricing of individual customers as well as of the customer base, potential

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

1   discounted pricing and sales plans, current, historical, and projected volumes, costs, technical

2   criteria, and other related data, as well as analysis of purchasing by product, dental specialty,

3   market segment, and others.  The data and the proprietary analytical tools provide curated insights

4   on how HSD does business, and provide data analytics of sales to every customer and of every

5   product sold.

6        22.     This extensive data and analysis, to which the FSCs have access, is confidential

7   HSI data and information, not available to competitors and others, and constitutes HSI's trade

8   secrets.  This information is available to the Company's FSCs only by virtue of their position and

9   employment with the Company.  Using this HSI data, FSIs can isolate markets, customers,

10  specialties, prices, margins, gross profit percentages, product sales, and other confidential data and

11  analysis, to gain a competitive advantage related to individual customers, product categories,

12  pricing and products.  This data and information, which is developed and analyzed by the

13  Company at substantial cost, has significant economic value to the Company because it is not

14  available to competitors and others.

15      **B.**     **Defendant Cook's Access to Confidential HSI Data, Analysis and Tools**

16       23.     FSCs obtain confidential HSI data and analysis by logging into the HSI computer

17  system with their Company laptops and using a computer program called "FSC" or another

18  proprietary program, "updating" or "syncing" the data on their laptops to the data on the

19  Company's main computers.  Through this "updating' or "syncing" process, the FSC will then

20  have on their Company laptop substantial and material amounts of the Company's information

21  concerning the customers assigned to that FSC, including the confidential Company information

22  of the type described above.   The FSC can then utilize this data, conduct HSI analysis, and

23  produce reports on their laptop.

24       24.     HSI has additional, web-accessible programs or "apps" through which an FSC,

25  after logging into a secure portal with their confidential Company credentials by use of a tablet or

26  smartphone, can receive HSI's customer and product related confidential information and analysis,

27  in a number of formats, and with additional, advanced analysis.  In this way, an FSC can obtain

28  comprehensive "360 Reports" on customers' history and relationships with HSI, including

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
COBLENTZ PATCH DUFFY & BASS LLP
415.391.4800 • Fax 415.989.1663

products, pricing, margins, customer preferences, gross profit, gross profit percentages and variances, and other aspects of the relationship.  An FSC can also obtain "drill down" reports, which allow detailed analysis of specific aspects of a customer's business relationship with the Company.  The web-based program has the added feature of allowing FSCs to "export" reports reviewed in the program, and to drop the substantial confidential Company data into a "csv" computer file format, which permits analysis of the data through use of other programs.

25.     HSI spent substantial amounts of time, energy and money to compile and analyze this data and information, to develop the analytical programs, and to make this material accessible to FSCs.

**C.      Reasonable Measures Taken to Protect HSI's Confidential Information**

26.     The data and information provided to the FSCs through these tools are confidential and proprietary to HSI; they are HSI's trade secrets.  They are available to the FSCs only by virtue of their employment with HSI, and are to be used solely to further HSI's business, customer sales and good will.  A competitor who had access to this data and analysis would have an unfair competitive advantage that could enable them, for example, to use HSI's own data and analysis, to underprice HSI's price quotations, and to better service and divert customers.

27.     HSI has taken significant steps to protect its confidential and proprietary information.  As set forth above, FSCs and other employees are required to enter into confidentiality and nondisclosure agreements, such as the Confidentiality Agreement, the Letter Agreement and the 2005 Letter Agreement described above.

28.     Further, HSI employees are able to gain access to HSI's data and information, only by means of password protected entry points, and FSCs cannot, absent special approval, access individual data about individual customers, other than those assigned to them.

29.     HSI also maintains employment and personnel policies requiring employees to maintain the confidentiality of the Company's confidential information, and Defendant Cook expressly agreed to comply with those policies.  HSI's express policy provides that:

> All Company records and information relating to the Company and
> its customers and suppliers as well as Team Schein Members are
> confidential. All Team Schein Members have an obligation not to

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663
COBLENTZ PATCH DUFFY & BASS LLP

disclose any of Henry Schein's sensitive and confidential information to anyone outside the Company and to use such information only in connection with the Company's business. Company-owned information (which is all data, including intellectual property, in any form, which has either been created using Henry Schein's resources or legally acquired by Henry Schein from third parties) is considered an asset and as such, whenever and wherever it is handled or stored, it requires protection from unauthorized access, modification, disclosure, use and destruction.

By agreement of May 6, 2005, Defendant Cook expressly agreed to comply with this policy.  Copies of this policy and of Cook's agreement thereto are annexed hereto as Exhibit 3.

30.     Plaintiff has spent and continues to spend significant amounts of time and money in developing, improving and protecting its confidential, proprietary, and trade secret information, and the tools used to access and utilize that data.

31.     The confidential, proprietary, and trade secret information has independent economic value in that it consists of information that is neither generally known nor readily ascertainable within the industry through lawful means.  Plaintiff has made reasonable efforts to ensure the secrecy of its confidential, proprietary, and trade secret information, and the confidential, proprietary, and trade secret information constitutes a trade secret that merits legal protection from unauthorized disclosure, misappropriation, dissemination and/or use.

***Defendant's Theft and Misappropriation of HSI's Information, and Attempts to Divert Plaintiff's Customers***

**A.      Defendant's Theft and Misappropriation of HSI's Trade Secret Information**

32.     Unbeknownst to Plaintiff, prior to her resignation, Defendant began to loot the Company's confidential, proprietary, and trade secret documents and information. Defendant did this by, *inter alia,* sending emails containing Plaintiff's trade secret reports and information, surreptitiously, from her Company email account to her personal email accounts.  In an attempt to conceal her unlawful conduct, Defendant then deleted these emails from her HSI account.  This conduct by Defendant was absolutely improper and unlawful, and was an attempt by Defendant to steal Plaintiff's information and to conceal her conduct in order to get an unlawful competitive advantage.

33.     After Defendant Cook resigned from the Company, the Company reviewed her

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663
COBLENTZ PATCH DUFFY & BASS LLP

1  Company email account, and the Company system; this review showed the improper conduct,

2  including the following:

3           a.     On Tuesday, May 10, 2016, three days before she resigned, defendant Cook

4  emailed from her HSI email account, to an account bearing the email address

5  "jenncook9@gmail.com", several extensive, detailed, confidential and proprietary Henry Schein

6  Practice Analysis Reports ("Practice Reports"), each of which is marked "CONFIDENTIAL".

7  These include Henry Schein Practice Analysis Reports for five HSI customers, each of whom had

8  a dental practice.  For one customer, Defendant emailed herself reports from both 2014 and 2015.

9  Not only is each Practice Report marked "CONFIDENTIAL", but each Practice Report contains

10  within them, numerous individual reports, each of which is also marked "CONFIDENTIAL" on

11  every page.  These reports analyze many aspects of each doctor's specific practice.  After emailing

12  these documents to her "gmail" account, Defendant deleted the sent email from her HSI email

13  account.

14           b.     On May 12, 2016, the day before she resigned from HSI, Defendant Cook

15  emailed from her HSI account to an account with the address jennlcook@aol.com, a copy of an

16  equipment inventory list prepared by HSI for a customer, an HSI document she had previously

17  obtained from HSI.  After emailing these documents to her "aol" account, Defendant deleted the

18  sent email from her HSI email account.

19           c.     On May 12, 2016, the day before she resigned from HSI, Defendant Cook

20  emailed from her HSI account to an account with the address jennlcook@aol.com, a product quote

21  and Dental Equipment and Technology Proposal that had been prepared by HSI for a customer,

22  and which contained, among other information, a confidential price quote.  After emailing these

23  documents to her "aol" account, Defendant deleted the sent email from her HSI email account.

24           d.     On May 12, 2016, the day before she resigned from HSI, Defendant Cook

25  emailed from her HSI account to an account with the address jennlcook@aol.com, the HSI

26  equipment list, configurations and HSI price quotations (bid) for a new clinic that HSI was

27  working to set up with a customer.  After emailing these documents to her "aol" account,

28  Defendant deleted the sent email from her HSI email account.

e.      On May 12, 2016, the day before she resigned from HSI, Defendant Cook emailed from her HSI account to an account with the address jennlcook@aol.com, maintenance records and approximately two years' worth of HSI invoices for one of Plaintiff's customers. After emailing these documents to her "aol" account, Defendant deleted the sent email from her HSI email account.

f.      On May 12, 2016, the day before she resigned from HSI, Defendant Cook emailed from her HSI account to an account with the address jennlcook@aol.com, detailed Dental Technology and Equipment Proposals prepared by HSI for a customer, proposals which contained HSI's confidential price quote for two different configurations of equipment. After emailing these documents to her "aol" account, Defendant deleted the sent email from her HSI email account.

All of these documents that Defendant Cook emailed to herself were the property of HSI. All of these materials: contained confidential and proprietary HSI information; had value because they were not known to or reasonable available through lawful means by competitors; contained HSI's trade secret information; and were to be utilized only in the good faith conduct of HSI's business. All of these documents were obtained and taken from the internal records of HSI, which are available only to HSI employees in the lawful conduct of HSI business. Defendant Cook, on information and belief, took these documents, for unlawful and improper use in trying to compete unfairly against HSI.

34.      In addition, on May 11, 2016, just two days before she resigned, Defendant "exported" ten reports from Plaintiff's web-based program, to Cook's local device. These exported reports included a "360 Report" and four (4) client "drill downs". A "360 Report" contains essentially all of the information that HSI has relevant to an account, including purchasing histories, pricing, margins, gross profit, gross profit percentages and variances, customer product preferences, analyses, and virtually all other data and information HSI has developed, compiled, or analyzed regarding the customer. The "drill down" reports are reports which allow detailed analysis on an aspect of the customer relationship, and include substantial confidential HSI information on an aspect of the customer's purchasing or preferences. All of these reports which Defendant Cook "exported", and all of the data in the reports, were the

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

1  property of HSI, and contained HSI's confidential and proprietary, trade secret information, which

2  was to be utilized only in the good faith conduct of HSI's business.

3       35.     To put the export of ten reports on May 11 in context, during the entire period from

4  January 1, 2016, through April 30, 2016, Defendant exported a total of sixteen (16) reports.  Yet,

5  on May 11, 2016, two days before she resigned, Defendant exported a total of ten (10) new

6  reports, including the comprehensive 360 Report.

7       36.     Upon information and belief, Defendant Cook exported these reports to steal and

8  misappropriate the reports and the data therein, and to use the reports to attempt to compete

9  unfairly and dishonestly.

10      37.     On May 14, 2016, after she resigned, Defendant Cook unlawfully accessed the HSI

11 computer system using a web-based app.  At this time, Cook was no longer employed by HSI, and

12 her access of the HSI computer system was unlawful.  The app she utilized was the "iPad app",

13 which would have enabled her to obtain all of Plaintiff's ordering and sales information, for the

14 customers assigned to her, for the period through May 14. 2016.

15      38.     Defendant took and misappropriated Plaintiff's trade secret information by

16 unlawful and improper means, as alleged above, and without Plaintiff's consent.  On information

17 and belief, Defendant has used and intends to continue to use, Plaintiff's trade secret information

18 that she took, to compete unfairly with Plaintiff.

19      **B.      Defendant Attempts to Divert Plaintiff's Customers While Employed by HSI**

20      39.     Prior to resigning from HSI's employ on May 13, 2016, Defendant visited the

21 offices of certain customers with whom she dealt on behalf of HSI, and, on information and belief,

22 deleted the HSI product ordering icons from the customers' computers, threw away all HSI

23 catalogues and representatives' business cards, and told the customers that they were moving to

24 Patterson with her.

25      40.     Certain customers were, on information and belief, left without an easy means to

26 contact HSI for product orders and assistance.  Another customer was, on information and belief,

27 given the impression by Defendant that Plaintiff and Patterson were merging, and that was why

28 Defendant was placing orders with Patterson.

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

COBLENTZ PATCH DUFFY & BASS LLP

41.     Defendant Cook engaged in the foregoing conduct while still employed by HSI, and in violation of her duties of utmost good faith and loyalty, and of her contractual obligations to HSI.

42.     Upon information and belief, Defendant misappropriated additional trade secret information, and diverted additional orders and sales, which have not yet been discovered.

43.     As a direct result of Defendant's conduct as aforesaid, HSI, on information and belief, lost a substantial amount in business and orders, had its customers improperly diverted, suffered damage to its good will with customers, and lost customers in Defendant's territory.  In addition, HSI faces further future losses of customers and good will as a result of Defendant's improper and unlawful conduct.  Further, Plaintiff has had to incur costs and retain counsel to investigate and remedy Defendant's conduct.

44.     Defendant's breaches and violations of contract, law and duty as alleged herein, have  damaged and will damage Plaintiff, in that they harm and tend to harm Plaintiff by damaging plaintiff's business good will, interfering with its customer relationships, and resulting in diversion  and loss of sales and customers.  Plaintiff has suffered and will continue to suffer lost sales, loss in the value of its relationships, and will be forced to incur attorneys' fees and other costs to protect its interests.  HSI's good will with customers has been damaged and interfered with, and its reputation harmed.

45.     Defendant's actions reflect her blatant disregard for legal and contractual obligations and evinces intent to continue with these violations.

## FIRST CAUSE OF ACTION
### Misappropriation of Trade Secrets Under the Defend Trade Secrets Act
### (18 U.S.C. § 1836, *et seq.*)

46.     Plaintiff repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

47.     Plaintiff owned and possessed certain confidential, proprietary and trade secret information, as alleged above.

48.     This confidential, proprietary, and trade secret information relates to products and services used, sold, shipped and ordered in, or intended to be used, sold, shipped and/or ordered

1  in, interstate or foreign commerce.

2      49.    Plaintiff has taken reasonable measures to keep such information secret and

3  confidential.

4      50.    This confidential, proprietary, and trade secret information derives independent

5  economic value from not being generally known to, and not being readily ascertainable through

6  proper means by another person who could obtain economic value from the disclosure or use of

7  the information.

8      51.    In violation of Plaintiff's rights, Defendant misappropriated the confidential,

9  proprietary and trade secret information in the improper and unlawful manner as alleged herein.

10      52.    Defendants' misappropriation of the confidential, proprietary, and trade secret

11  information was intentional, knowing, willful, malicious, fraudulent, and oppressive.

12      53.    Defendant has failed to return Plaintiff's confidential and trade secret information,

13  and attempted to conceal her theft of such information.  On information and belief, if Defendant's

14  conduct is not remedied, and if Defendant is not enjoined, Defendant will continue to

15  misappropriate, disclose, and use for her own benefit and to Plaintiff's detriment, Plaintiff's trade

16  secret information.

17      54.    As the direct and proximate result of Defendant's conduct as aforesaid, Plaintiff has

18  suffered and, if Plaintiff's conduct is not stopped, will continue to suffer, irreparable injury and

19  significant damages, in an amount to be proven at trial.

20      55.    Because Plaintiff's remedy at law is inadequate, Plaintiff seeks, in addition to

21  damages, temporary, preliminary, and permanent injunctive relief to recover and protect its

22  confidential, proprietary, and trade secret information and other legitimate business interests.

23  Plaintiff's business is reliant on its business reputation and its ability to maintain and grow its

24  client base in a competitive market and will continue suffering irreparable harm absent injunctive

25  relief.

26      56.    Plaintiff has a substantial likelihood of success on the merits because of

27  Defendant's blatant, willful, and malicious misappropriation of trade secrets through the improper

28  and unlawful methods, as alleged herein.

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663
COBLENTZ PATCH DUFFY & BASS LLP

10653.002 3464849v1

13

**COMPLAINT**

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

57.    Plaintiff has been damaged by all of the foregoing, and is entitled to its damages, in an amount to be determined at trial, as well as an award of exemplary damages and attorney's fees.

**SECOND CAUSE OF ACTION**
**Misappropriation of Trade Secrets Under the California Uniform Trade Secrets Act**
**(California Civil Code § 3426, et seq.)**

58.    Plaintiff repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

59.    Plaintiff owned and possessed confidential and proprietary documents and data containing trade secrets, including, but not limited to, customer lists, analyses and information, all as alleged herein.

60.    Plaintiff made reasonable efforts to keep secret the information contained in these confidential and proprietary documents, by, among others, limiting access to confidential information, requiring employees, including Defendant, to sign confidentiality agreements, implementing employment policies that required confidentiality, and limiting computerized access.

61.    Plaintiff's trade secrets contained in the documents and data alleged herein, derive independent economic value, both actual and potential, from not being generally known to other persons, businesses, or the public, who could obtain economic value from their disclosure or use.

62.    In violation of Plaintiff's rights at law and under contracts, Defendant misappropriated the trade secret data, documents and information described herein by secretly emailing key documents to herself, by "updating" her computer programs when she was about to resign, and thereafter, by exporting confidential documents and information to herself, and by taking the other actions alleged herein.

63.    As the direct and proximate result of Defendant's misappropriation as aforesaid, Plaintiff has suffered and, if Plaintiff's conduct is not enjoined, will continue to suffer irreparable injury, as well as damages in an amount to be determined at trial.

64.    Because Plaintiff's remedy at law is inadequate, Plaintiff seeks, in addition to its damages, temporary, preliminary and permanent injunctive relief to recover and protect its trade

secrets and other legitimate business interests.

65.     Plaintiff has a substantial likelihood of success on the merits because of Defendant's blatant misappropriation of trade secrets as set forth herein.

66.     Defendant's acts were malicious, fraudulent, and oppressive, and were done with conscious disregard of Plaintiff's rights, all within the meaning of California Civil Code Section 3294, in that Defendant misappropriated Plaintiff's trade secret information intentionally and knowingly and with a deliberate intent to benefit herself and injure Plaintiff's business. Plaintiff is entitled to its damages, in an amount to be determined at trial, as well as injunctive relief, and an award of punitive damages and/or treble damages and attorney's fees pursuant to California Civil Code Sections 3426.3(c) and 3426.4.

### THIRD CAUSE OF ACTION
### Breach of Fiduciary Duty and Duty of Loyalty

67.     Plaintiff repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

68.     As an employee of Plaintiff, Defendant owed Plaintiff her undivided loyalty and was obligated to act with the utmost good faith, and in the best interests of Plaintiff.

69.     Plaintiff was entitled to place its trust and confidence in Defendant and to expect Defendant to act with the utmost good faith toward it in carrying out the business of Plaintiff.

70.     Plaintiff relied on Defendant's loyalty and integrity and her faithful performance of her duties and responsibilities.

71.     Defendant took advantage of Plaintiff's faith in her by not performing her duties to Plaintiff, by acting in conflict of interest, by engaging in business for her own account and for Plaintiff's competitor, Patterson, and in competition with Plaintiff, and by deceiving Plaintiff and concealing her improper conduct.

72.     Defendant knowingly and willing breached her duty of loyalty to Plaintiff by scheming to deceive and defraud Plaintiff, misappropriating and stealing HSI's confidential and trade secret information, attempting to divert customers to Patterson, soliciting Plaintiff's customers on her own behalf and on behalf of Patterson while employed by HSI, and diverting and

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

misappropriating Plaintiff's trade secrets, confidential and proprietary business information, and customers.

73.     Defendant acted in a manner inconsistent with her agency and trust by soliciting Plaintiff's customers on her own behalf, and on behalf of Plaintiff's competitors, and by diverting and misappropriating Plaintiff's sales, profits and property; Defendant acted on her own and on Patterson's behalf, and against Plaintiff's interests, while employed by HSI.

74.     As a direct and proximate result of Defendant's disloyalty to Plaintiff and breach of her duties, Plaintiff has been and is being harmed.  Plaintiff is entitled to its damages, in an amount to be determined at trial, as well as disgorgement from Defendant, and the forfeiture and return of all monies and compensation paid to her during her period of disloyalty, the exact amount to be determined at trial.  Plaintiff is further entitled to injunctive relief against Defendant and all those acting in concert or participation with her, remedying their past improper conduct, and preventing such conduct in the future.

75.     Defendant is, on information and belief, still in possession of HSI's confidential and trade secret information, and, on information and belief, is able to access and use this information on behalf of Plaintiff's competitor, Patterson.  Further, on information and belief, Defendant shared this confidential information with others who may use, or are using the information to Plaintiff's detriment.

76.     As a direct and proximate result of Defendant's disloyalty, Plaintiff has been irreparably injured, and has suffered damages in an amount to be determined at trial.  Because its remedy at law is inadequate, Plaintiff seeks, in addition to its damages, preliminary and permanent injunctive relief, enjoining Defendant, and all those acting in concert or participation with her, from further improper conduct, and from dealing with the customers whose confidential information she misappropriated, and further remedying their improper conduct as aforesaid.

### FOURTH CAUSE OF ACTION
**Breach of Written Contract**

77.     Plaintiff repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

CoBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

78.     Pursuant to the Letter Agreement, Defendant was obligated to, *inter alia*: (i) use her best efforts to solicit, sell to and service all customers assigned to her by Plaintiff, (ii) hold in strict confidence, any and all confidential information within her knowledge concerning the products, processes, services, business, suppliers and customers of Plaintiff, (iii) refrain from, soliciting Plaintiff's customers on behalf of Plaintiff's competitors, or asking or suggesting to any of Plaintiff's customers that they move all or a portion of their business to a supplier other than Plaintiff.

79.     Pursuant to the Confidentiality Agreement Defendant was obligated to, *inter alia*: keep confidential, both during and subsequent to her employment with Plaintiff, all of Plaintiff's confidential, proprietary, and trade secret information

80.     In breach of her contractual obligations, Defendant did not use her best efforts to solicit, sell to, and service, the customers Plaintiff assigned to her.  Instead, while employed by Plaintiff, Defendant diverted and attempted to divert sales to Patterson, made misrepresentations to Plaintiff's customers, and unfairly competed with Plaintiff.  In addition, Defendant misappropriated Plaintiff's confidential, proprietary, and trade secret information.

81.     As a direct and proximate cause of Defendant's breach Plaintiff has suffered extensive damage, the exact amount to be determined at trial.

82.     Plaintiff will continue to be directly and proximately damaged, and its good will irreparably harmed, if Defendant is not enjoined from further violation of these agreements, and if Defendant is not directed to comply therewith, and prohibited from using and disclosing Plaintiff's confidential and proprietary information.  Plaintiff has no adequate remedy at law as money damages alone will not fully compensate Plaintiff, and injunctive relief is warranted to prevent further irreparable harm to Plaintiff.

83.     Plaintiff accordingly seeks damages and preliminary and permanent injunctive relief.

### FIFTH CAUSE OF ACTION
#### Breach of Implied Covenant of Good Faith and Fair Dealing

84.     Plaintiff repeats, realleges, and incorporates by reference the prior allegations of

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

this Complaint as if fully set forth herein.

85.     The Letter Agreement between Plaintiff and Defendant contained an implied covenant of good faith and fair dealing.  This implied covenant obligated Defendant to refrain from doing any act that would deprive Plaintiff of the benefits of the agreement or that would impede Plaintiff from performing any or all of the conditions of the agreement that it agreed to perform.

86.     Defendant's misconduct as described herein breached the implied covenant of good faith and fair dealing.  Specifically, Defendant failed to further and develop Plaintiff's business during the time prior to her resignation or otherwise adequately perform her duties as a Field Sales Consultant for the Company.  Instead, upon information and belief, Defendant contacted clients with whom she worked and informed them of her plans to work for Plaintiff's competitor, Patterson, and attempted to transfer her accounts to Patterson while she was employed by HSI. Additionally, during the course of her employment, Defendant transferred, without authorization, Plaintiff's confidential and proprietary business information to her personal email accounts.

87.     As a proximate result of these breaches and of the other improper conduct alleged above, Plaintiff has been irreparably injured and has suffered damages in an amount to be determined at trial.  Because its remedy at law is inadequate, Plaintiff also seeks, in addition to its damages, preliminary and permanent injunctive relief.

### SIXTH CAUSE OF ACTION
**Tortious Interference with Prospective Economic Advantage**

88.     Plaintiff repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

89.     Plaintiff had a reasonable business expectancy and ongoing relationship with its customers.  Plaintiff had a reasonable expectation in engaging in business with, and in earning profits in connection with sales to, (a) its existing customers with whom Defendant dealt, (b) new customers with whom Defendant dealt while employed by Plaintiff, and (c) customers who were involved in negotiations and discussions with Plaintiff and/or with Defendant while she was employed by Plaintiff.

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

90.    Defendant knew of Plaintiff's business relationship and business expectancy from the customers.

91.    Defendant intentionally, and in violation of her duties, interfered with that expectancy by diverting existing and prospective accounts, and by other proper means. Defendants engaged in this diversion through fraudulent and deceitful conduct, such as that alleged herein, and other conduct that may be discovered.

92.    Defendant's misconduct was intentional, outrageous, and deceitful, and committed in reckless disregard of their duties and Plaintiffs' rights.

93.    As a direct and proximate result of Defendant's improper conduct, Plaintiff has suffered damages including lost profits, the exact amount to be determined at trial.

94.    In addition, Defendant's wrongful acts also were willful, oppressive, malicious and/or fraudulent, thereby justifying an award of punitive damages.

## SEVENTH CAUSE OF ACTION
### Violation of California Unfair Competition Law

95.    Plaintiff repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

96.    Defendant, on information and belief, knowingly performed acts to pirate away the fruits of Plaintiff's customer base, including, but not limited to: interfering with the prospective economic advantage Plaintiff has with its customers, deceiving the customers, diverting the customers while employed by Plaintiff, diverting and attempting to divert the customers through use trade secrets misappropriated from Plaintiff, and by engaging in the other acts alleged herein. These acts constitute unlawful, unfair, and/or fraudulent business practices and unfair competition prohibited under California Business and Professions Code Sections 17200 *et seq.*.

97.    As a result of such acts, Plaintiff has suffered, and will continue to suffer, irreparable harm by Defendant's unfair practices and unfair competition, including but not limited to harm to its business reputation, good will and stature, in the business community and with its customers, for which there is no adequate remedy at law, thereby justifying injunctive relief.

98.    Until and unless injunctive relief is granted, Plaintiff will be harmed and Defendant

will be unjustly enriched, which should be disgorged pursuant to allowable remedies under California Business and Professions Code Sections 17200 *et seq.*

## EIGHTH CAUSE OF ACTION
### Violation of California Penal Code § 502

99.     Plaintiff repeats, realleges, and incorporates by reference the prior allegations of this Complaint as if fully set forth herein.

100.     Defendant's conduct, as alleged herein, violated California Penal Code § 502, in that she knowingly and without permission used HSI's data, computer, computer system, and/or computer network, wrongfully to control or obtain confidential and proprietary property and data.

101.     Defendant's conduct, as alleged herein, further violated California Penal Code § 502, in that she knowingly and without permission copied and/or made use of data and/or documents stored on HSI's computer, computer system, or computer network.

102.     Defendant's conduct, as alleged herein, further violated California Penal Code § 502, in that she knowingly and without permission accessed or caused to be accessed HSI's computer, computer system, or computer network.

103.     Defendant's actions, as alleged herein, were outside the scope of any prior authority she ever had to access, alter, damage, modify, obtain, control and/or use, or cause to be accessed, altered, damaged, modified, obtained, controlled and/or used, HSI's computer, computer system, computer network and data, including its proprietary and confidential information.

104.     As a direct and proximate result of Defendant's conduct, HSI suffered and continues to suffer damages including, but not limited to, the costs of conducting an investigation into Defendant's conduct, the costs of conducting a damage assessment, the costs and reputational harm associated with notifying customers of Defendant's conduct, and the cost of taking corrective action based on Defendant's conduct, such amounts to be determined at trial.

105.     Defendant's acts were willful, and were taken willingly and voluntarily, with oppression, fraud, and malice, and justify an awarding to Plaintiff, of exemplary and punitive damages.

**WHEREFORE**, Plaintiff respectfully demands judgment in its favor and against

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

Defendant as follows:

      A.      Awarding damages as described in each of the above claims, in favor of Plaintiff and against Defendant in amounts to be determined at trial, and further directing forfeiture and disgorgement of all amounts paid by Plaintiff to Defendant during the period of disloyalty.

      B.      Granting a temporary and permanent injunction against Defendant, enjoining her from violating her legal and contractual duties to Plaintiff, from soliciting or accepting business from Plaintiff's customers whose data she took or who she solicited for Patterson while employed by Plaintiff, and from using Plaintiff's confidential and proprietary information, and directing return of all of Plaintiff's property.

      C.      Awarding punitive damages in favor of Plaintiff and against Defendant in the amount of $1,000,000, the exact amount to be determined at trial.

      D.      Awarding Plaintiff pre-judgment and post-judgment interest, and its attorneys' fees, costs and other expenses incurred in this action;

      E.      Granting Plaintiff such other and further relief as this Court deems just and proper.

DATED: June 9, 2016             COBLENTZ PATCH DUFFY & BASS LLP

By: _____
Jeffrey G. Knowles
Attorneys for Plaintiff
Henry Schein, Inc.

ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · Fax 415.989.1663
COBLENTZ PATCH DUFFY & BASS LLP

# EXHIBIT 1

**HENRY SCHEIN, INC.**
**and**
**SUBSIDIARIES**

## CONFIDENTIALITY AND NON-SOLICITATION AGREEMENT

IN CONSIDERATION OF MY EMPLOYMENT by Henry Schein, Inc. and/or any of its subsidiaries, affiliates or divisions (individually or collectively, as the case may be, the "Company") in a capacity which makes available to me confidential information and trade secrets on which the Company's business depends, I agree:

1.　　I will keep confidential and will not use or disclose to others, either during or subsequent to my employment, any confidential information, trade secrets, business information, software-related information, research or development information, technical or product information, pricing, costing, customer lists, supplier lists, marketing or sales information, pending acquisitions, business plans or other financial information or any other matter which I learn through my association with the Company (collectively, "confidential information"), unless (i) such confidential information is documented to have been in the public domain prior to my use or disclosure of it, or (ii) I am compelled by a court of law, pursuant to government process, to disclose such confidential information. Except to the extent necessary for me to perform my duties on behalf of the Company, I will not make any copies, abstracts or summaries of any Company documents or information or any duplicates of any discs, tapes or other forms of data storage or information.

2.　　Upon my separation from the Company for any reason, I will return to the Company all notebooks, memoranda, personal notes, software, hardware, other documents, discs, tapes, material or property of the Company and all other confidential information, and all copies thereof, which are in my possession.

3.　　Upon my separation from the Company for any reason, and for twelve (12) months thereafter, I agree not to: (i) solicit, induce or encourage any of the Company's employees to terminate or curtail their relationship with the Company; (ii) employ or manage any person who was at any time within one year prior to the termination of my employment, or then is, in the employ of the Company; (iii) encourage or assist any individual or entity to do (i) or (ii) above; or (iv) solicit the patronage of any past or then-current customer of the Company.

4.　　I understand that this Agreement is binding on me and my heirs and legal representatives, and that its terms cannot be waived or modified except by a written document signed by both myself and a duly authorized officer of the Company. I also understand that this Agreement does not guarantee that the Company will employ me for any specific time period nor does it interfere with the Company's right to terminate or modify my employment or compensation.

5.　　I agree that, in the event of a breach or threatened breach of any of the provisions of this Agreement, the Company's remedies at law would be inadequate, and the Company shall be entitled to an injunction to enforce such provisions (without any bond or other security being required), but nothing herein shall be construed to preclude the Company from pursuing any action or further remedy, at law or in equity, for any breach or threatened breach of such provisions or any other provisions of this Agreement, including, but not limited to, the recovery of damages.

6.　　The rights and obligations of the Company under this Agreement shall inure to the benefit of and shall be binding upon the successors and assigns of the Company. The laws of the State of New York shall govern all questions relative to the interpretation and construction of this Agreement, and to the performance hereof. No waiver by the Company of any default hereunder shall in any way prejudice the Company with respect to any subsequent default hereunder (whether or not similar). This Agreement contains the entire understanding of the parties respecting the subject matter hereof.

7.　　This Agreement shall survive the voluntary or involuntary termination of my employment with the Company.

DATE: 4/30/05

_Jennifer Cook_
SIGNATURE OF EMPLOYEE

_Jennifer Cook_
TYPE OR PRINT EMPLOYEE'S NAME

WITNESS

LOCATION

# EXHIBIT 2



HENRY SCHEIN®
DENTAL

GENERAL BUSINESS: 414-321-8881
FAX: 414-321-5163
www.henryscheindental.com

February 25, 2011


Jennifer Cook
1469 Woodside Circle
Petaluma, California  94954

Dear Jennifer:

As was previously discussed between Jennifer Cook and Keith M. Wilson, Regional Manager, this Agreement is made and entered into as of the 21st day of February 2011, by and between Henry Schein, Inc., through its Henry Schein Dental division (collectively, "HSD"), with offices at 255 Vista Blvd., Sparks, Nevada 89434, and Jennifer Cook, ("Representative").

   WHEREAS, Representative has been employed by HSD and has recently held the position of Field Sales Consultant; and

   WHEREAS, Representative desires to continue to support and work for the efforts of HSD, and to increase and expand sales to customers and additional customers, and to assist in the efforts of the Company in the territories in which Representative may be assigned by Company;

   WHEREAS, the parties wish to make provision for the protection of the Company's goodwill and confidential information;

   NOW, THEREFORE, in consideration of continued employment and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by all parties, Company and Representative agree as hereinafter set forth.

   1.      Representative's duties shall be those assigned to her from time to time by the Company.  Representative shall devote her full time, energy, technical knowledge, know-how and skill to the Company's affairs and to the promotion of its interests in a manner consistent with the highest standards customarily applicable to persons occupying similar positions.  Representative shall use her best efforts to solicit, sell to and service, all customers assigned to her by HSD.  Representative shall also attempt to project HSD's name, reputation and good will, to new, prospective and existing HSD customers located within the geographic territory in which her assigned customers are located; except that Representative shall receive commission only in connection with the customers approved by Company for this purpose.



ISO  REGISTERED

2.      Representative shall at all times hold in strictest confidence any and all confidential information within her knowledge (whether acquired or developed prior to or after the date hereof) concerning HSD, and/or concerning the products, processes, services, business, suppliers and customers of HSD. Such confidential information includes, without limitation, financial information, sales and distribution information, the discounted prices at which products may be offered to customers; credit profiles, the sales plans which any customer is party to, other terms of such sales plans, the fact that a particular customer is or is not on a sales plan; the terms of any agreement or arrangement to which Company is or was a party, and technical information, as well as any other information that Representative learns in connection with her employ with the Company, all to the extent that such information is not readily available to the public, or is not readily and properly available to, others in the trade.

3.      To the greatest extent permitted by applicable law:

(A)     Representative agrees that, during her employment with HSD, and for a period of twelve (12) months after termination of Representative's employment with HSD, where such termination is either by resignation by Representative, or by termination by Company for Cause (as "Cause" is defined in paragraph 6 below): Representative will not, directly or indirectly, individually, through others, or in assistance to others, or as a shareholder, director or officer of a corporation, partner of any partnership, or as an employee, agent, consultant or advisor of any business or entity, which provides products or services that are competitive with those provided by Company:

        (i)      service, solicit, sell to, assist in soliciting, servicing or selling to, or offer to provide, or provide, goods and/or services to, or consult with, or compete with the Company, in connection with the sale of goods, products and/or services to:

                (1)      any Customer ("Customer" shall be defined as any customer that Representative was involved in servicing, soliciting or selling to on behalf of Company, at any time during the last twenty-four (24) months of her employ by or on behalf of the Company); or

                (2)      any entity or individual who was a customer of HSD within the geographic territory in which Representative's assigned customers were located during the twenty four (24) months preceding the date of termination of Representative's employment with the Company, and with whom Representative was in contact in a business capacity on behalf of Company, during such twenty four (24) month period;

        (ii)     ask or suggest to a Customer, that such Customer consider moving all or a portion of its business to a supplier other than HSD.

(B)     During her employment with HSD, and for a period of twelve (12) months from and after the date of the termination employment with HSD, Representative shall not, either on her own

account, or for any person, firm, partnership, corporation or other entity (i) recruit, solicit, interfere with, induce, attempt to induce, or endeavor to cause, any employee or agent of HSD to leave his or her employment or agency with HSD; or (ii) induce or attempt to induce any such employee or agent to breach his or her agreement or arrangement with HSD.

(C)     Notwithstanding anything herein to the contrary, upon (i) the completion of the third anniversary from the date of execution hereof by all parties hereto, the restrictions contained in Paragraph 3(A) hereof shall be in effect: during Representative's employment with HSD and for a period of six (6) months from the date of the termination of Representative's employment with HSD. This Paragraph 3(C) effects only the time period specified in Paragraph 3(A).

4.     (A)     This Agreement may not be assigned by the Employee, without the Company's prior written consent.  HSD may assign this Agreement to a successor, affiliate or other entity, or as part of any transfer or sale of HSD assets.

(B) The rights and covenants of this Agreement, shall inure and extend to the parties hereto, their respective heirs, personal representatives, successors and permitted assigns.

5.     <u>Miscellaneous</u>.  This instrument contains the entire agreement of the parties hereto with respect to the subject matter hereof.  It may not be modified orally but only in writing signed by the parties hereto.  Any action relating to this Agreement or the breach thereof shall be brought exclusively in the Federal or State courts of the State of Nevada, within Washoe County.  The parties hereto consent to the jurisdiction of the Federal or State courts of the State of Nevada within Washoe County for any such action.  The parties further agree that this Agreement shall be governed by and construed in accordance with the laws of the State of Nevada, without regard to conflicts of law.  If any provision of the Agreement is held to be invalid, illegal or unenforceable by any court of competent jurisdiction, such invalid, illegal or unenforceable provision(s) shall not affect the remainder of this Agreement.  A court considering this agreement may modify any unenforceable term hereof to render this Agreement lawful and enforceable, and to effectuate, to the fullest extent permitted by law, the parties' intent as set forth herein.  The failure of either party to enforce at any time any of the provisions hereunder shall not be construed to be a waiver of any such provision or of the right of such party thereafter to enforce any such provision.  Representative agrees that (a) the protections for the Company set forth in this Agreement are of vital concern; (b) monetary damages for any violation thereof would not adequately compensate Company, (c) Company is engaged in a highly competitive business; and agrees that Company shall be entitled, in addition to all other rights and remedies under this Agreement and applicable law, to an injunction, restraining order or other equitable relief, without posting bond, from any court of competent jurisdiction, restraining any violations or threatened violations of this Agreement.

6.     For the purposes of this agreement, "Cause" shall mean any of the following: (a) any material breach of Representative's obligations to Company (which is not cured within five days' notice to Representative, if curable); (b) gross incompetence, willful misconduct or willful neglect in the execution of Representative's duties on behalf of Company; (c) fraud, misappropriation, theft,

gross malfeasance or willful dishonesty on the part of Representative, including, without limitation, conduct of a felonious or criminal nature, conduct involving moral turpitude, embezzlement, misappropriation of assets, or improper conduct in connection with any dealings or arrangements with clients, customers, suppliers or vendors; (d) use of illegal drugs, or of drugs or intoxicants that impair Representative's ability to properly perform his duties on behalf of Company; (e) violation of Representative's fiduciary obligations to the Company; (f) repeated or continued absence from work during normal business hours for reasons other than disability or vacation, unless specifically and in writing, approved by Company; or (g) repeated violation, after warning from the Company, of any of the policies, rules, regulations, standards or practices of the Company.  Representative acknowledges and agrees that she is an employee at-will, that there is no fixed term of employment, and that Company may terminate Representative's employment, whether with or without Cause, at any time, with or without advance warning and/or notice, and with or without Cause.

       7.     All documents, materials, advertising or sales material or information, price lists, customer lists, order forms, order guides, samples, computers and the data contained therein, and/or other material or data of any kind furnished to Representative by the Company, or prepared by Representative on Company's behalf, or at its direction, or for use in connection with Representative's employment, and/or any confidential information as defined hereunder, and/or any proprietary information of the Company, are and shall remain the Company's sole property.  Representative agrees that upon termination of Representative's employment for any reason, Representative will immediately deliver to the Company, all of the Company's property, reports, papers, books, manuals, lists, correspondence, and documents, Confidential Information, and proprietary information, as well as any other materials which may involve the Company's business, together with all copies thereof (including electronic copies or files), irrespective of whether Representative created the same or was involved with the same; Representative will neither copy nor take any such material upon leaving the Company's employ.

The parties hereto have executed this Agreement on the day and year first above written.

REPRESENTATIVE:

_Jennifer Cook_ (signature)
Jennifer Cook

FOR HSD:

_David A. Steck_ (signature)
David A. Steck
Vice President and General Manager
Henry Schein Dental

2/23/11
Date

3/2/11
Date

EXHIBIT 3

# OUR RESPONSIBILITIES
# TO OUR SHAREHOLDERS (Continued)

### Sensitive and Confidential Information

All Company records and information relating to the Company and its customers and suppliers as well as Team Schein Members are confidential. All Team Schein Members have an obligation not to disclose any of Henry Schein's sensitive and confidential information to anyone outside the Company and to use such information only in connection with the Company's business. Company-owned information (which is all data, including intellectual property, in any form, which has either been created using Henry Schein's resources or legally acquired by Henry Schein from third parties) is considered an asset and as such, whenever and wherever it is handled or stored, it requires protection from unauthorized access, modification, disclosure, use and destruction. Failure to adequately protect this asset risks loss of customer relationships, loss of public confidence, operational disruption, excessive costs and competitive disadvantage.

### Records Retention

Henry Schein is subject to legal and regulatory requirements regarding the retention and disposal of records. In the event the Company receives any notice of pending or potential litigation, government investigation or government audit, Team Schein Members should note that the regular operation of Henry Schein's records retention policy, insofar as it covers disposal of records, should stop immediately. No Team Schein Member should ever, under any circumstances, destroy any Henry Schein record in anticipation or contemplation of a request for such records in litigation or from any governmental agency.

A Team Schein Member receiving information regarding pending or potential litigation, a governmental investigation or audit should immediately notify the General Counsel's office.

### Conflicts of Interest

Every Team Schein Member has a duty of loyalty to Henry Schein. The duty of loyalty requires Team Schein Members to avoid actual or apparent conflicts of interest between personal and professional relationships. A conflict of interest may occur where a Team Schein Member places himself or herself in a position where personal or external interests could potentially influence or impair – or even appear to influence or impair – the Team Schein Member's ability to perform his or her job duties or his or her undivided loyalty to Henry Schein. Team Schein Members also must avoid:

- using information learned through their positions at Henry Schein for personal gain or advantage;

- disclosing confidential information or failing properly to safeguard confidential information from unauthorized third parties; and

- obtaining for a third party an improper gain or advantage (such as loaning Henry Schein funds to, or arranging for the Company to guarantee the obligations of, family members or friends).

All Team Schein Members have an obligation to devote their full business time and efforts to the Company as well as to make sure they remain free of conflicts of interest in the performance of their duties at Henry Schein.

A conflict of interest may also occur whenever Team Schein Members take for themselves business opportunities that are discovered by virtue of their position with Henry Schein or when Team Schein Members compete with the Company. Team Schein Members have a duty to advance the Company's legitimate interests when the opportunity to do so arises.

Any Team Schein Member who has a question about whether an outside activity might constitute an actual or perceived conflict of interest between one's personal and Company-related relationships or a breach of his or her obligations to the Company must obtain the approval of the General Counsel's office before pursuing the activity.

## CERTIFICATE OF RECEIPT

I certify that I have received Worldwide Business Standards Training in connection with Henry Schein, Inc.'s Worldwide Business Standards, a copy of which has been provided to me.

I agree to comply with the terms of the Worldwide Business Standards, and I understand that violation of the Worldwide Business Standards may lead to disciplinary action, including termination of my employment.

SIGNATURE: _Jennifer Cook_

NAME (Print): _Jennifer Cook_

DEPARTMENT: _FOC_

DATE: _5/9/05_

Please return completed form to the trainer.