JEFFREY G. KNOWLES (State Bar No. 129754)
ANDREW SCHALKWYK (State Bar No. 287170)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, California  94104-5500
Telephone:   415.391.4800
Facsimile:   415.989.1663
Email:      ef-jgk@cpdb.com,
             ef-aps@cpdb.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| HENRY SCHEIN, INC., | Case No. |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION** |
| v. | |
| JENNIFER COOK, | |
| Defendant. | |
| | Trial Date:      None Set |

10653.002 3464989v1

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................ 1

FACTUAL OVERVIEW ............................................................................. 2

    I.    Cook is Subject to Binding Agreements with HSI, Prohibiting Improper Disclosure or Use of HSI's Confidential, Proprietary and Trade Secret Information ................................................................................. 2

    II.    Cook Misappropriated HSI's Confidential, Proprietary, and Trade Secret Documents and Information ......................................... 4

    III.    Cook Destroyed Evidence and Attempted to Hide Her Misappropriation of HSI's Information .......................................... 6

    IV.    Cook Attempted to Divert HSI Customers Away from HSI While Employed by HSI ................................................................... 6

    V.    Cook's Misappropriation Has Caused and Will Continue to Cause Irreparable Harm to HSI ............................................................ 6

ARGUMENT ............................................................................................... 7

    I.    Cook's Violations of Trade Secret and Unfair Competition Laws, and Breaches of Her Employment Agreements and Duty of Loyalty, Entitle HSI to Injunctive Relief ................................... 7

        A.    HSI Requires Immediate Injunctive Relief in the Form of a Temporary Restraining Order to Prevent Immediate, Long Lasting and Irreparable Harm ............................................. 8

        B.    HSI is Likely to Succeed on the Merits of its Trade Secret Claims Under the DTSA .................................................. 9

        C.    HSI is Likely to Succeed on the Merits of its Trade Secret Misappropriation Claims Under the CUTSA ..................... 11

            1.    HSI's Confidential Customer Data and Reports Constitute Protectable Trade Secrets Under the CUTSA ......................... 12

            2.    Cook Misappropriated HSI's Trade Secrets in Violation of the CUTSA .................................................................. 14

        D.    HSI is Likely to Succeed on the Merits of its Unfair Competition Claim Under the UCL ................................... 15

        E.    HSI is Likely to Succeed on the Merits on its Breach of Contract Claim ......................................................... 16

        F.    HSI is Likely to Suffer Irreparable Injury in the Absence of Immediate Injunctive Relief ............................................. 17

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

10653.002 3464989v1

i

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

G.     The Balance of Hardships Strongly Favors HSI ........................................ 18

H.     Granting the Requested Injunctive Relief Would Advance the Public Interest ............................................................................................................... 18

I.      The Court Should Not Require A Bond .................................................... 19

J.      The Court Should Include Document Preservation Orders in the Proposed Temporary Restraining Order .................................................... 19

II.      Limited Expedited Discovery is Necessary ......................................................... 20

CONCLUSION ............................................................................................................................ 21

CoBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Bank of Am., N.A. v. Lee*,
   No. CV 08-5546 CAS(JWJX), 2008 WL 4351348 (C.D. Cal. Sept. 22, 2008) .................14, 19

*Brocade Comm. Sys. Inc. v. A10 Networks, Inc.*,
   873 F. Supp. 2d 1192 (N.D. Cal. 2012) ........................................................... 12

*California v. Tahoe Regional Planning Agency*,
   766 F.2d 1319 (9th Cir. 1985) ...................................................................... 19

*Courtesy Temp. Serv., Inc. v. Camacho*,
   222 Cal. App. 3d 1278 (Ct. App. 1990) ......................................................... 15

*FPI Development, Inc., v. Nakashima*,
   231 Cal. App. 3d 367 (Cal. Ct. App. 1991) .................................................... 16

*Gallagher Benefits Servs., Inc. v. De La Torre*,
   No. C 07-5495 VRW, 2007 WL 4106821 (N.D. Cal. Nov. 16, 2007), *order
   aff'd in part, vacated in part sub nom. Gallagher Benefit Servs., Inc. v. De La
   Torre*, 283 F. App'x 543 (9th Cir. 2008) ....................................................... 17

*Gorbach v. Reno*,
   219 F.3d 1087 (9th Cir. 2000) ...................................................................... 19

*Grooms v. Legge*,
   No. 09CV489-IEG-POR, 2009 WL 704644 (S.D. Cal. Mar. 17, 2009) ................ 21

*Hertz Equip. Rental Co. v. Useda*,
   No. CV10 4953, 2010 WL 11424123 (N.D. Cal. Nov. 2, 2010).....................15, 20

*Jorgansen v. Cassiday*,
   320 F.3d 906 (9th Cir. 2003) ........................................................................ 19

*KLA-Tencor Corp. v. Murphy*,
   717 F. Supp. 2d 895 (N.D. Cal. 2010) .......................................................20, 21

*Klamath-Orleans Lumber, Inc. v. Miller*,
   87 Cal. App. 3d 458 (Ct. App. 1978).........................................................15, 16

*Lillge v. Verity*,
   No. C 07–2748, 2007 WL 2900568 (N.D. Cal. Oct. 2, 2007).............................. 18

*MAI Systems Corp. v. Peak Computer, Inc.*,
   991 F.2d 511 (9th Cir. 1993) ........................................................................ 12

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
MOTION FOR EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

*Markovits v. Venture Info Capital, Inc.*,
    129 F. Supp. 2d 647 (S.D.N.Y. 2001).................................................................... 17

*Morlife, Inc. v. Perry*,
    56 Cal. App. 4th 1514 (Cal. Ct. App. 1997)..........................................7, 12, 14, 19

*Oculus Innovative Scis., Inc. v. Nofil Corp.*,
    No. C 06-1686-SI, 2007 WL 4044867 (N.D. Cal. Nov. 15, 2007)...................... 16

*PQ Labs, Inc. v. Yang Qi*,
    No. 12-0450 CW, 2014 WL 4954161 (N.D. Cal. Sept. 30, 2014) ....................... 12

*Reeves v. Hanlon*,
    33 Cal. 4th 1140 (2004)...................................................................................... 14

*Religious Technology Center v. Netcom On-Line Communications Services, Inc.*,
    923 F. Supp. 1231 (N.D. Cal. 1995) ................................................................... 13

*Saini v. Int'l Game Tech.*,
    434 F. Supp. 2d 913 (D. Nev. 2006) ..................................................................... 7

*Semitool, Inc., v. Tokyo Electron Am.*,
    208 F.R.D. 273 (N.D. Cal. 2002)....................................................................20, 21

*Stormans, Inc. v. Selecky*,
    586 F.3d 1109 (9th Cir. 2009) .............................................................................. 7

*Stuhlbarg Int'l Sales Co., v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) .............................................................................. 17

*TMX Funding, Inc. v. Impero Techs., Inc.*,
    No. C. 10–00202 JF (PVT), 2010 WL 1028254 (N.D. Cal. Mar. 18, 2010)........... 18

*Whyte v. Schalge Lock Co.*,
    101 Cal. App. 4th 1443 (Cal. Ct. App. 2002)...................................................... 13

*Wm. T. Thompson Co. v. General Nutrition Corp.*,
    592 F. Supp. 1443 (C.D. Cal. 1984) ................................................................... 20

**Statutes & Rules**

18 U.S.C. § 1836(b) ................................................................................................ 9

18 U.S.C. § 1836(b)(3)(A) ....................................................................................... 7

18 U.S.C. §§ 1836 *et seq.*....................................................................................... 7

18 U.S.C. § 1839(3) ...........................................................................................10, 11

18 U.S.C. § 1839(5) .............................................................................................. 10

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

18 U.S.C. § 1839(6) ...........................................................................................10, 11

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ........................................................ 7, 15

Cal. Bus. & Prof. Code § 17203 ............................................................................. 7

Cal. Civ. Code § 3426.1 ................................................................................... 7, 14

Cal. Civ. Code § 3426.1(a) ................................................................................... 12

Cal. Civ. Code § 3426.1(b) ................................................................................... 12

Cal. Civ. Code § 3426.1(d) .............................................................................12, 13

Cal. Civ. Code § 3426.1(d)(1) .............................................................................. 13

Cal. Civ. Code § 3426.2 ......................................................................................... 7

Cal. Civ. Code § 3426.2(a) ................................................................................... 14

Fed. R. Civ. P. 26(d)(1) ........................................................................................ 20

Fed. R. Civ. P. 65 .................................................................................................... 8

Fed. R. Civ. P. 65(b) ............................................................................................... 8

Fed. R. Civ. P. 65(c) .............................................................................................. 19

Fed. R. Civ. P. 65(d) ............................................................................................... 8

**Other Authorities**

Congressional Report 114-529, Defend Trade Secrets Act of 2016 (April 26, 2016) ..........9, 10, 19

James Pooley, *Trade Secrets* (2009) § 4.02[2][a] ...................................................... 12

Milgrim, *Trade Secrets* § 1.09[7] ..................................................................... 12

Restatement (Third) of Unfair Competition § 42, comment f ...................................... 12

10653.002 3464989v1

v

MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
MOTION FOR EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663
COBLENTZ PATCH DUFFY & BASS LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Henry Schein, Inc. (the "Plaintiff" or "HSI") submits this memorandum of points and authorities in support of its Application and Motion (the "Application") for (a) a temporary restraining order; (b) an order to show cause why a preliminary injunction should not issue against Defendant Jennifer Cook (the "Defendant" or "Cook"); and (c) an order allowing certain expedited discovery. This memorandum should be read in conjunction with the accompanying declarations of Glenn Showgren ("Showgren Dec.") and Tracy Brown ("Brown Dec."), and the Complaint herein.

## INTRODUCTION

In the days leading up to her resignation from HSI, Defendant Cook downloaded and emailed to her personal possession a large volume of HSI's confidential and proprietary documents and other data containing HSI trade secrets, and then tried to hide her conduct by attempting to delete the incriminating emails from her Henry Schein email account. (Showgren De., paras. 7, 17 – 23.) Also prior to resigning, Cook attempted to divert HSI customers to her new employer (and HSI competitor) Patterson Dental ("Patterson") by soliciting the customers for Patterson while still employed by HSI, and by removing HSI ordering icons and other ordering resources from the customers' offices. (Brown Dec., paras. 5 – 6.) With the customer information that Cook secretly took from HSI, Cook and Patterson are now in a position to divert HSI's customers using HSI's own trade secrets.

Cook's blatant violations of her duties of loyalty and of her confidentiality agreements with HSI were directed at interfering with HSI's customer relationships and diverting the customers to Patterson. Her blatant disregard for HSI's rights, and for her own obligations under law and contract, and her attempts to destroy incriminating evidence, compel the conclusion that she will continue her unlawful conduct – and attempt to conceal that conduct – unless she is immediately enjoined.

The destruction of evidence could prevent HSI from ever learning – and therefore remedying – the extent of damage it has suffered and may suffer. Similarly, Defendant Cook's improper actions have interfered with HSI's good will with its customers. Every day that passes

1

1  creates more opportunity for Defendant to irreparably damage HSI's business good will.

2        Accordingly, the present relief is urgently sought.  For reasons described herein, the Court

3  should grant the instant Motion.

4                                    **FACTUAL OVERVIEW**

5        The facts relevant to this application, appearing more fully in the accompanying

6  declarations, are briefly as follows:

7        HSI hired Defendant Cook as a Field Sales Consultant ("FSC") with Henry Schein Dental

8  ("HSD") (then called Sullivan Schein Dental), in April 2005.  HSI assigned Cook a group of

9  customers with whom to develop good will for the Plaintiff, and whom Defendant was to service,

10  solicit, and sell to on behalf of Plaintiff.  The group of customers assigned to Defendant changed

11  and developed over time.  (Complaint, para. 9; Showgren Dec., para. 3.)

12        As an employee of HSI, Defendant was obligated to devote her full loyalty and good faith

13  to HSI, and was prohibited from engaging in any actions in violation of these duties, or which

14  tended to harm HSI, or further the interests of a competitor.  In addition, HSI and Cook entered

15  into several agreements, which were specifically directed at protecting HSI's confidential and

16  proprietary, trade secret documents and information.  (Showgren Dec., para. 16; Complaint, paras.

17  13 – 20.)

18  I.   **Cook is Subject to Binding Agreements with HSI, Prohibiting Improper Disclosure or**
     **Use of HSI's Confidential, Proprietary and Trade Secret Information**

19

20        In connection with her employment at HSI, Defendant Cook entered into an April 30, 2005

21  Confidentiality and Non-Solicitation Agreement (the "Confidentiality Agreement") (Exhibit 1 to

22  the Complaint) and a February 25, 2011 Letter Agreement (the "Letter Agreement") (Exhibit 2 to

23  the Complaint), which explicitly prohibited Cook from improperly disclosing or using HSI's

24  confidential, proprietary, and trade secret information.  Specifically, Paragraph 1 of the

25  Confidentiality Agreement states that Cook will:

26        keep confidential and will not use or disclose to others, either during or subsequent
        to [her] employment, any confidential information, trade secrets, business
27        information, software-related information, research or development information,
        technical or product information, pricing, costing, customer lists, supplier lists,
28        marketing or sales information, pending acquisitions, business plans or other

CoBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
MOTION FOR EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

> financial or any other matter which [she] learned through [her] association with the Company (collectively "confidential information")…

Defendant Cook also agreed that she "would not make copies, abstracts or summaries of any Company documents or information or any duplicates of any discs, tapes or other forms of data storage or information." *Id.*  Pursuant to Paragraph 2 of the Confidentiality Agreement, Exhibit 1 to Complaint, Cook also agreed that:

> upon [her] separation from the Company for any reason, [she] would return to the Company all notebooks, memoranda, personal notes, software, hardware, other documents, discs, tapes, material or property of the Company and all other confidential information, and all copies thereof, which are in [her] possession.

> Further pursuant to Paragraph 2 of the Confidentiality Agreement, Cook agreed that:

> in the event of breach or threatened breach of any provisions of this Agreement, the Company's remedies at law would be inadequate, and the Company shall be entitled to an injunction to enforce such provisions (without any bond or other security being required)...

Pursuant to paragraph 5 of the Confidentiality Agreement (Complaint, Exhibit 1), Cook also agreed that "… in the event of a breach or threatened ·breach of any of the provisions of this Agreement, the Company's remedies at law would be inadequate, and the Company shall be entitled to an injunction to enforce such provisions (without any bond or other security being required)…".

Pursuant to Paragraph 1 of the Letter Agreement, Cook agreed to use her "best efforts" on behalf of HSI to "solicit, sell to and service all customers assigned to her by [HSI]" and to "attempt to project [HSI's] name, reputation and good will, to new, prospective and existing [HSI] customers located within the geographic territory in which her assigned customers are located."

Pursuant to Paragraph 2 of the Letter Agreement, Cook agreed to "hold in strictest confidence any and all confidential information within her knowledge … concerning [HSI], and/or concerning the products, processes, services, business, suppliers and customers of HSI." *Id.* Specifically, the Letter Agreement stated that such confidential information includes, without limitation:

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

financial information, sales and distribution information, the discounted prices at which products may be offered to customers; credit profiles, the sales plans which any customer is party to, other terms of such sales plans, the fact that a particular customer is or is not on a sales plan; the terms of any agreement or arrangement to which Company is or was a party, and technical information, as well as any other information that Representative learns in connection with her employ with the Company, all to the extent that such information is not readily available to the public, or is not readily and properly available to, others in trade.

*Id*. at Paragraph 2.  Finally, Pursuant to Paragraph 7 of the Letter Agreement, Defendant Cook agreed that:

upon termination of [her] employment for any reason, [she] [would] immediately deliver to the Company, all of the Company's property, reports, papers, books, manuals, lists, correspondence, and documents, Confidential Information, and proprietary information, as well as any other materials which may involve the Company's business, together with all copies thereof (including electronic copies or files), irrespective of whether [she] created the same or was involved with the same; [Cook] will neither copy nor take any such material upon leaving Company's employ.

In addition to these agreements, the parties entered into an earlier letter agreement on April 20, 2005 (the "2005 Letter Agreement"), which provided further protection for HSI's confidential information and good will.  (Complaint, para. 11; Showgren Dec., para. 16.) Defendant Cook also specifically agreed to comply with HSI's business standards, under which she was obligated to protect and maintain as confidential, HSI's confidential business information. (Showgren Dec., para. 14.)

## II.   Cook Misappropriated HSI's Confidential, Proprietary, and Trade Secret Documents and Information

Notwithstanding her legal duties and her agreements with HSI, while employed by HSI, Cook misappropriated HSI's confidential, proprietary, trade secret documents and information, and attempted to divert HSI customers to Patterson.

Throughout her employment with HSI, Cook was tasked with servicing, soliciting, and selling to customers.  (*See* Showgren Dec., para. 2 – 3.)  In order to carry out her job, Cook had access to, received and contributed to, HSI's confidential, proprietary, and trade secret information and databases, including the confidential, proprietary, and trade secret tools and processes used to create and analyze such information.  Specifically, Cook had access to, and downloaded to her

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663
COBLENTZ PATCH DUFFY & BASS LLP

10653.002 3464989v1                                        4

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

1    laptop and other devices, information related to HSI's customers, products, margins, profit

2    percentages, credit profiles, preferences and markets, particularly with respect to the customers

3    assigned to her.  This data was collected, developed and analyzed, using proprietary HSI software.

4    This software allowed Cook to access and produce reports containing or analyzing this customer

5    information, as well as derivative information, such as buying patterns, customer needs and

6    preferences, marketing and pricing strategies for customers.  (*See* Showgren Dec., para. 10.)

7        Unbeknownst to HSI, prior to her resignation, Cook began to loot HSI's confidential,

8    proprietary, and trade secret documents and information with the apparent goal of diverting HSI's

9    customers.  For example, on May 10, 2016, Cook forwarded from her HSI email account, to a

10   personal email account, several comprehensive, confidential HSI customer practice reports that

11   were produced using HSI's proprietary software.  Each of these reports was marked "confidential"

12   and contained a wide array of confidential and trade secret information.  (Showgren Dec., para.

13   18(a).)

14       On May 12, 2016, the day before she resigned, Cook forwarded from her HSI email

15   account, to a personal email account, numerous additional customer-related reports, including an

16   equipment inventory report, price quotations for prospective customers, and equipment proposals

17   on which HSI was working.  (Showgren Dec., paras. 18(b)-18(f).)

18       Cook accessed the HSI computer system on May 13, 2016, the day she resigned.  Cook

19   logged into HSI's system with HSI's proprietary "FSC" computer program.  This had the effect of

20   "updating" onto Cook's laptop, substantial, specific, customer related sales and ordering data from

21   the HSI computer system.  Cook then failed and refused to return her laptop to HSI, for two full

22   weeks after she resigned, despite repeated demands from HSI.  (Showgren Dec., para. 17.)

23       On May 14, 2016, after she resigned, Defendant Cook unlawfully accessed the HSI

24   computer system, this time using a web-based "iPad app" and her company credentials.  At this

25   time, Cook was no longer employed by HSI, and her access of the HSI computer system was

26   unlawful.  Using the iPad app in this fashion would enable Cook to obtain on her iPad, large

27   amounts of ordering and purchase data for each of the HSI customers that had been assigned to

28   her.  (Showgren Dec., para. 22.)

10653.002 3464989v1

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500 • Fax 415.989.1663
415.391.4800

COBLENTZ PATCH DUFFY & BASS LLP

### III.   Cook Destroyed Evidence and Attempted to Hide Her Misappropriation of HSI's Information

After sending herself HSI's information, Cook attempted to erase from the HSI computer system the digital paper trail of her misconduct.  After sending the email to her personal email accounts she deleted from her HSI email account file, the emails in which she sent HSI's confidential information.  However, she did not completely remove the emails; the emails were still on HSI's system, set for deletion, when HSI reviewed her account. (Showgren Dec., para. 18(a) – (f).)

### IV.   Cook Attempted to Divert HSI Customers Away from HSI While Employed by HSI

Before her resignation, and while still employed by HSI, Cook also attempted to divert HSI customers to Patterson.  Cook visited the offices of certain HSI customers, deleted the HSI product ordering icon from their computer systems and destroyed HSI catalogues and business cards.  She then informed those customers that they would now be ordering products through Patterson.  (Brown Dec., paras. 5 – 7.)

### V.   Cook's Misappropriation Has Caused and Will Continue to Cause Irreparable Harm to HSI

Defendant Cook's actions, both past and ongoing, threaten irreparable harm to HSI.  Cook's actions indicate her intent to misappropriate HSI's trade secret information with the intent to use it to benefit Cook and Patterson, to the detriment of HSI.  There is a real and substantial threat that Cook and Patterson will use the trade secret information developed by HSI through great effort and expense.  Such use threatens to destroy the value of a key business asset.  Further, Cook's interference with HSI's customer relationships and good will threatens to harm those relationships in ways that cannot be measured or compensated by money damages.

Cook's intentional destruction of evidence highlights her blatant disregard for her obligations and the likelihood that she engaged in additional unlawful actions.  Accordingly, Plaintiff HSI respectfully asks that this application be granted in all respects.

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

**ARGUMENT**

**I.**   **Cook's Violations of Trade Secret and Unfair Competition Laws, and Breaches of Her Employment Agreements and Duty of Loyalty, Entitle HSI to Injunctive Relief**

"[F]undamental to … [the] right to have the ingenuity and industry one invests in the success of a business or occupation protected from the gratuitous use of that 'sweat of the brow' by others."  *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1520 (Cal. Ct. App. 1997).  This principle is codified in a number of legislative enactments, including the recently enacted Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836 *et seq*., the California's Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426.1 *et seq*., and the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*.

Under the DTSA and the CUTSA, a court may grant an injunction to prevent any "actual or threatened misappropriation."  *See* Cal. Civ. Code § 3426.2; 18 U.S.C. § 1836(b)(3)(A). Similarly, under the UCL, "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction."  Cal. Bus. & Prof. Code § 17203.  Finally, both the Confidentiality Agreement and Letter Agreement provide that, in the event of a "breach or threatened breach," HSI shall be entitled to "an injunction, restraining order or other equitable relief," and courts in Ninth Circuit have enjoined former employees who breached similar agreements.  *See, e.g., Saini v. Int'l Game Tech*., 434 F. Supp. 2d 913, 925 (D. Nev. 2006) (granting preliminary injunction prohibiting former employee from disclosing confidential information and trade secrets in violation of confidentiality agreement).

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).  HSI satisfies the elements for granting the requested injunctive relief and a temporary restraining order should be issued on HSI's trade secret, unfair competition, and breach of contract claims.

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663
COBLENTZ PATCH DUFFY & BASS LLP

**A.**   **HSI Requires Immediate Injunctive Relief in the Form of a Temporary Restraining Order to Prevent Immediate, Long Lasting and Irreparable Harm**

Under Federal Rule of Civil Procedure 65, a district court may issue a temporary restraining order ("TRO") to prevent "immediate and irreparable injury, loss, or damage [ ] to the movant." Fed. R. Civ. P. 65(b), (d).  HSI would suffer immediate and irreparable injury, loss and damage should the Court not issue a TRO, enjoining Cook from: destroying documents and other evidence; exploiting or disclosing HSI's trade secret and other confidential information; violating her confidentiality obligations to HSI; or soliciting business from HSI's customers whose accounts she was assigned while at HSI.

The threat of trade secret misappropriation, and of damage to customer relationships and business good will, are both well recognized as constituting irreparable injury.  Not only is the value of trade secrets and confidential data lost through disclosure and use by a competitor, but the use of HSI's own trade secret information to enable a competitor to develop business solutions and pricing for the supply needs of HSI customers, would give a competitor an unfair head start, enable the competitor to trade on Plaintiff's efforts, and interfere with Plaintiff's customer relationships and good will.  All of this may lead to loss of sales and customers in ways that cannot be readily measured or compensated by money damages.  Thus, Defendant's actions in the short term can significantly change the status quo, causing substantial harm.

Cook has shown her intent by using her position at HSI to divert customers from HSI to her new employer, Patterson, and to use HSI's confidential information in the process.  It is likely that she is actively engaged in, and will continue with, these efforts, armed with the highly valuable customer information she misappropriated from HSI.  To prevent irreparable harm resulting from Cook's misappropriation of HSI's trade secrets and interference with HSI's relationships, it is imperative that the Court take action with immediate effect to prevent further exploitation of this information and of Cook prior improper conduct.  The Court should enjoin Cook, and all those acting in concert with her, from soliciting or accepting business from customers to whom Cook was assigned while employed at HSI.

Further, Cook has shown herself willing to destroy evidence in an attempt to cover her

10653.002 3464989v1

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

1  tracks by, among other things deleting emails.  Therefore, for HSI to be able to adequately litigate

2  this case, prove damages, and obtain appropriate relief, the Court should enjoin Cook from taking

3  any further steps to destroy evidence of her wrongdoing.  Because Cook has already destroyed

4  evidence – as indicative of a carefully considered plan to misappropriate HSI's information – the

5  Court should also order the immediate "imaging" of all of Cook's devices and electronic accounts

6  on which it is likely that there is evidence of her misappropriation and exploitation of HSI's

7  information.  (*See* Showgren Dec., para. 18 (a) – (f.).)

8      Absent the issuance of a TRO with immediate effect it is highly likely that HSI will suffer

9  immediate and irreparable damage to its business by losing the competitive advantage conferred

10  by the trade secrets which were misappropriated by Cook, by losing evidence crucial to its claims

11  against Cook, and by losing customers as a result of Cook's wrongful conduct in interfering with

12  Plaintiff's good will and trade secrets.

13  **B.**    **HSI is Likely to Succeed on the Merits of its Trade Secret Claims Under the**

14  **DTSA**

15      The DTSA was enacted to provide a "single, national standard for trade secret

16  misappropriation with clear rules and predictability for everyone involved."  *See* Congressional

17  Report 114-529, Defend Trade Secrets Act of 2016, at *5 (April 26, 2016).  Congress's creation of

18  a unified standard, in lieu of the state-by-state versions of the Uniform Trade Secrets Act, was

19  meant to reduce the "costly compliance plans to meet each individual state's law" and make it

20  easier for companies engaged in interstate commerce, such as HSI, to combat "trade secret theft …

21  not confined to a single state."  *Id.* at *4 (April 26, 2016) ("In a globalized and national economy,

22  Federal courts are better situated to address these concerns").

23      The DTSA allows an "owner of a trade secret that is misappropriated" to bring a civil

24  action under this subsection if the "trade secret is related to a product or service used in, or

25  intended for use in, interstate or foreign commerce."  18 U.S.C. § 1836(b).  Under the DTSA, a

26  "trade secret" includes:

27          all forms and types of financial, business, … [or] economic [] information,
          including … compilations, … methods, techniques, processes, procedures, [or]

28          programs [], whether tangible or intangible, and whether or how stored, compiled,

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
MOTION FOR EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

or memorialized physically, electronically, graphically, photographically, or in writing if—

>  (A) the owner thereof has taken reasonable measures to keep such information secret; and
>  (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3).  The DTSA's defines "misappropriation" as:

>  (A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>  (B) disclosure or use of a trade secret of another without express or implied consent by a person who—
>  (i) used improper means to acquire knowledge of the trade secret;
>  (ii) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was—
>  (I) derived from or through a person who had used improper means to acquire the trade secret;
>  (II) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>  (III) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret; or
>  (iii) before a material change of the position of the person, knew or had reason to know that—
>  (I) the trade secret was a trade secret; and
>  (II) knowledge of the trade secret had been acquired by accident or mistake;

18 U.S.C. § 1839(5).  Finally, the DTSA defines "improper means" to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means…."  18 U.S.C. § 1839(6).

While not explicitly discussed in the text of the DTSA, the legislative history of the DTSA indicates that Congress intended the DTSA to be interpreted as a federal remedy, under a uniform body of federal trade secret law that strongly favors protection of trade secrets.  *See* Congressional Report 114-529, Defend Trade Secrets Act of 2016, at *5 (April 26, 2016):

>  The Defend Trade Secrets Act of 2016 (S. 1890) offers a needed update to Federal law to provide a Federal civil remedy for trade secret misappropriation. Carefully balanced to ensure an effective and efficient remedy for trade secret owners whose intellectual property has been stolen, the legislation is designed to avoid disruption of legitimate businesses, without preempting State law. … Victims will be able to move quickly to Federal court, with certainty of the rules, standards, and practices to stop trade secrets from winding up being disseminated and losing their value. As trade secret owners increasingly face threats from both at home and abroad, the bill

CoBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

10653.002 3464989v1

10

1    equips them with the tools they need to effectively protect their intellectual
2    property and ensures continued growth and innovation in the American economy.

3    *Id.* at *6 (April 26, 2016) (emphasis added).

4          Based on the plain language of the DTSA, a court is likely to find that Cook's stealing of

5    HSI's confidential customer-related information constituted a violation of the DTSA.  Congress

6    clearly intended to afford to data compilations and analyses of customer related information, the

7    trade secret protection of the DTSA.  *See, e.g., id.* at *2 ("Examples of trade secrets include …

8    *customer lists.*") (emphasis added).

9          The information at issue falls squarely within the DTSA's definition of trade secrets.  HSI

10   derived significant economic value from the information from the fact that this information is not

11   publicly known.  (Showgren Dec., paras. 7, 10 – 13.)  HSI also took reasonable measures to keep

12   this information secret, such as limiting access to the information, entering into confidentiality

13   agreements with its employees, and utilizing password protection to control its dissemination,

14   among other things (*see* Showgren Dec., paras. 13 – 16 ).  18 U.S.C. § 1839(3).

15         And Cook misappropriated these trade secrets through improper means.  Specifically,

16   Cook knew or had reason to know that her actions in taking numerous customer reports from HSI

17   with her to her new job at Patterson constituted theft or, at the very least, a breach of her

18   contractual and common law duties to maintain the secrecy of this information.  18 U.S.C.

19   § 1839(6).  Why else would she have deleted the emails which she used send herself the

20   information?  Therefore, HSI is likely to succeed on the merits of its DTSA claim.

21      **C.**    **HSI is Likely to Succeed on the Merits of its Trade Secret Misappropriation Claims Under the CUTSA**
22

23         As explained *supra*, since the facts plainly reveal that Cook took HSI's confidential,

24   proprietary, and trade secret information in the days leading up to and after her resignation, and

25   then attempted to conceal her actions, HSI is likely to succeed on the merits of its CUTSA claims.

26   The CUTSA defines "trade secrets" as including information, compilations, programs, methods,

27   techniques, or processes that 1) derive independent economic value from not being generally

28   known to and not being readily ascertainable through proper means by another person who can

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

10653.002 3464989v1

11

1   obtain economic value from the disclosure or use of the information; and 2) which the owner has

2   taken reasonable measures to keep such information secret.  *See* Cal. Civ. Code § 3426.1(d).  The

3   CUTSA defines "misappropriation" as:

(1) Acquisition of a trade secret of another by a person who knows or has reason to
know that the trade secret was acquired by improper means; or
(2) Disclosure or use of a trade secret of another without express or implied
consent by a person who:
(A) Used improper means to acquire knowledge of the trade secret; or
(B) At the time of disclosure or use, knew or had reason to know that his or
her knowledge of the trade secret was:
    (i)     Derived from or through a person who had utilized improper
means to acquire it;
    (ii)    Acquired under circumstances giving rise to a duty to
maintain its secrecy or limit its use; or
    (iii)   Derived from or through a person who owed a duty to the
person seeking relief to maintain its secrecy or limit its use;

12   Cal. Civ. Code § 3426.1(b).  Finally, "improper means," for the purposes of the CUTSA, includes

13   theft, misrepresentation, breach of a duty to maintain secrecy, or espionage through electronic or

14   other means.  *See* Cal. Civ. Code § 3426.1(a).

### 1.   HSI's Confidential Customer Data and Reports Constitute Protectable Trade Secrets Under the CUTSA

17   "It is universally recognized that information about customers can represent the most

18   valuable secrets a business owns."  James Pooley, *Trade Secrets* (2009) § 4.02[2][a] (citing

19   Restatement (Third) of Unfair Competition § 42, comment f, and Milgrim, *Trade Secrets*

20   § 1.09[7]).  Indeed, there is no shortage of relevant cases that have found similar customer

21   information to qualify as protectable trade secrets under the CUTSA.  *Brocade Comm. Sys. Inc. v.*

22   *A10 Networks, Inc.*, 873 F. Supp. 2d 1192, 1214 (N.D. Cal. 2012) (finding "customer-related

23   information including … pricing guidelines … and customers' business needs/preferences ... is

24   routinely given trade secret protection.");  *PQ Labs, Inc. v. Yang Qi*, No. 12-0450 CW, 2014 WL

25   4954161, at *5 (N.D. Cal. Sept. 30, 2014) (holding that the plaintiff's customer information,

26   including "pricing history, pricing, customer information and sales data" constituted protectable

27   trade secrets).  *See, e.g., Morlife, Inc., v. Perry, supra*; *MAI Systems Corp. v. Peak Computer, Inc.*,

28   991 F.2d 511, 521 (9th Cir. 1993) (finding that a customer database qualified as a trade secret

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663
COBLENTZ PATCH DUFFY & BASS LLP

1   because it had potential economic value to allow a competitor to direct its sales efforts to potential

2   customers).

3          The HSI reports taken by Cook, as well as the extensive data downloaded through the

4   "FSC" program and "iPad app", contained extensive customer related data and confidential

5   analysis, historical data, special customer pricing, information on margins, profit and variances.

6   Indeed, the information Cook took from HSI included, among other valuable information,

7   customer contact information, product preferences, purchase scheduling information, gross profit

8   percentages and variances, pricing history, historic discounts and promotions, credit profiles and

9   payment data.  (Showgren Dec., paras. 10 – 13, 17 – 22.)  The confidential nature and

10  unquestionable economic value of this data to a competitor is demonstrated by the fact that

11  Defendant Cook herself exported numerous customer reports containing this information, so that

12  she would have it after she left HSI.

13         Such information constitutes a well-recognized form of trade secrets under CUTSA.  This

14  information is not publicly known or readily ascertainable and it derives its economic value from

15  the fact that it is secret because others in the industry would find value in its disclosure.  Cal. Civ.

16  Code § 3426.1(d)(1); *See, e.g., Whyte v. Schalge Lock Co.*, 101 Cal. App. 4th 1443, 1455 (Cal. Ct.

17  App. 2002) (noting that this type of information "has independent economic value because [the

18  plaintiff's] pricing policies would be valuable to a competitor to set prices which meet or undercut

19  [the plaintiff's].").  HSI expended significant time and resources developing this information,

20  including through use of HSI proprietary software and processes. (Showgren Dec., paras. 7, 10-

21  13.)

22         The information at issue was subject to efforts that were reasonable under the

23  circumstances to protect its secrecy.  Cal. Civ. Code § 3426.1(d).  This information was not for

24  disclosure outside of the business; the employees with access to this information, including

25  Defendant Cook, were subject to confidentiality agreements identifying this information as highly

26  confidential and restricting its uses, and even employees could obtain much of this information

27  only about the customers assigned to them.  (Showgren Dec., paras. 10, 12-14; 15 - 17.)  *See, e.g.,*

28  *Religious Technology Center v. Netcom On-Line Communications Services, Inc.,* 923 F. Supp.

10653.002 3464989v1

13

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

COBLENTZ PATCH DUFFY & BASS LLP

1231, 1253 (N.D. Cal. 1995) (noting that reasonable efforts can include "advising employees of the existence of a trade secret" and "requiring employees to sign confidentiality agreements").  In addition, HSI requires password access to the computer systems in which this information is maintained, and restricts access based on an employee's position and customer assignments. (Showgren Dec., para. 14.) *See, e.g., Bank of Am., N.A. v. Lee*, No. CV 08-5546 CAS(JWJX), 2008 WL 4351348, at *4 (C.D. Cal. Sept. 22, 2008) (noting that the plaintiff used reasonable efforts to keep its customer information secretive "based on the written [confidentiality] agreements … and their password protection system.").  In sum, the abundant state and federal law interpreting the CUTSA demonstrates a high likelihood that Plaintiff will succeed in establishing that the information at issue constitutes protectable trade secrets.

### 2.   Cook Misappropriated HSI's Trade Secrets in Violation of the CUTSA

Even at this very early stage of the case, it is clear that Cook misappropriated HSI's trade secrets in violation of the CUTSA, and of her duty of loyalty.  Cook "acqui[red]" HSI's trade secrets before her resignation by "updating" or "syncing" her computer to HSI's computer system, and by emailing herself numerous batches of HSI's highly confidential information and reports, when she "[knew] or ha[d] reason to know" that doing so was "improper", where it constituted "theft," a "breach … of [her] duty to maintain [the] secrecy" of such information, both contractually and under relevant law.  Cal. Civ. Code § 3426.1.  The fact that Cook subsequently attempted to delete the emails that she sent from her company account to her personal account, further demonstrates that Cook "[knew] or ha[d] reason to know" that what she was doing was indeed "improper." *Id.*  California courts have also "equated acts of solicitation with 'use' or 'misappropriation' of protected information." *Morlife, Inc. v. Perry*, *supra,* 56 Cal. App. 4th at 1524 (Cal. Ct. App. 1997); *Reeves v. Hanlon*, 33 Cal. 4th 1140, 1155 (2004) (noting that the CUTSA prohibits former employees from using client lists to solicit customers of their former employers).  And like the DTSA, the CUTSA explicitly permits a court to enjoin even the threatened misappropriation of trade secrets.  Cal. Civ. Code § 3426.2(a).  Thus, there is a strong likelihood that a court would find that Cook "misappropriated" HSI's trade secrets in violation of the CUTSA.

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

**D.    HSI is Likely to Succeed on the Merits of its Unfair Competition Claim Under the UCL**

The UCL provides a private right of action for any injury caused by unfair or unlawful business practices. *See generally* Cal. Bus. & Prof. Code §§ 17200 *et seq.* While the UCL covers a wide variety wrongful conduct, California courts have repeatedly enjoined the kind of unfair and unlawful conduct undertaken by Defendant Cook in this case. *See, e.g., Klamath-Orleans Lumber, Inc. v. Miller*, 87 Cal. App. 3d 458, 466 (Ct. App. 1978) (noting that the "defendants' ability to solicit both more selectively and more effectively was due to their extensive use of plaintiff's customer list a patent act of unfair competition."); *Courtesy Temp. Serv., Inc. v. Camacho*, 222 Cal. App. 3d 1278, 1291 (Ct. App. 1990); *Hertz Equip. Rental Co. v. Useda*, No. CV10 4953, 2010 WL 11424123 (N.D. Cal. Nov. 2, 2010) (granting a temporary restraining order under the UCL based upon similar facts).

For example, in *Camacho*, the court found that the defendant, a former employee of the plaintiff, violated the UCL by stealing the plaintiff's confidential information and then using that information to solicit the plaintiff's customers. *Camacho*, 222 Cal. App. 3d at 1291. The Court of Appeals explicitly rejected the lower court's limitation of the statute's remedies to trade secrets. [1] It held instead, that "even if [the plaintiff's] customer list would not qualify as a 'trade secret' under [the CUTSA,] the unfair and deceptive practices of employees in stealing [the plaintiff's] customers should have been enjoined under [the UCL]." *Id.* Thus, the *Camacho* court directed the lower court to enter a preliminary injunction because the defendant's "use of confidential information obtained from his former employer to compete with him and to solicit the business of his former employer's customers, is regarded as unfair competition." *Id.* at 1292 (citing *Greenly v. Cooper*, 77 Cal. App. 3d 382 (Ct. App. 1978)).

Cook, like the defendant in *Camacho*, misappropriated confidential, proprietary, and trade secret documents and information from HSI in furtherance of her attempt to divert the customers

---

[1] The *Camacho* court ultimately held that the customer list at issue was, in fact, a trade secret under the CUTSA. *Camacho*, 222 Cal. App. 3d at 1288.

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663
Coblentz Patch Duffy & Bass LLP

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

she dealt with while employed by HSI.  (Showgren Dec., paras. 17 – 22.)  With this HSI

information and data, Cook, and in turn, Patterson, remain able "to solicit both more selectively

and more effectively."  *Klamath-Orleans Lumber, Inc. v. Miller*, 87 Cal. App. 3d 458, 466 (Ct.

App. 1978).  Cook's actions qualify as the very kind of unfair and unlawful business practices that

the UCL was designed to protect against.  Therefore, under well-established California law, HSI

has a strong likelihood of success on its unfair competition claim under the UCL.

**E.      HSI is Likely to Succeed on the Merits on its Breach of Contract Claim**

Given the substantial evidence already described, there can be little doubt that HSI will

also succeed on its breach of contract claim.  In order to prove a breach of contract claim, HSI

must show the existence of a contract, its terms establishing the obligations at issue, the breach of

those obligations, and resulting damages.  *See FPI Development, Inc., v. Nakashima*, 231 Cal.

App. 3d 367, 383 (Cal. Ct. App. 1991).  Express confidentiality and non-disclosure agreements,

such as the agreements at issue in this case, are valid and enforceable in California, and a breach

of such agreement may be pursued through a common law breach of contract claim.  *See, e.g.,*

*Oculus Innovative Scis., Inc. v. Nofil Corp.*, No. C 06-1686-SI, 2007 WL 4044867, at *3 (N.D.

Cal. Nov. 15, 2007).

Here, it is indisputable that Cook entered into the Confidentiality and Letter Agreements

with HSI.  (Showgren Dec., paras. 14 – 16; Complaint, paras. 13 – 20.)  By the terms of those

contracts, Cook agreed to keep confidential and, "[e]xcept to the extent necessary for [her] to

perform [her] duties on behalf of [HSI] … not make copies" of any of the numerous categories of

confidential, proprietary, and trade secret information explicitly described in the Confidentiality

and Letter Agreements, including, without limitation, customer lists, pricing and product

information, marketing or sales information, and business plans.  Further, Cook agreed to

immediately return any of HSI's confidential, proprietary, and trade secret information, expressly

including "electronic copies or files," upon her resignation and "neither copy nor take any such

material upon leaving [HSI's] employ."

Based on the facts already presented to the Court at this very early stage, it is clear that

Cook did precisely the opposite of what her agreements required; Cook copied and sent to her

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

1   personal email accounts, the very information she agreed not to copy or take with her.  (Showgren

2   Dec., para. 18.)  The Confidentiality and Letter Agreements also required Cook to use her "best

3   efforts" to protect HSI's "name, reputation[,] and good will," in her dealings with "new,

4   prospective[,] and existing [HSI] customers…."  (Showgren Dec., paras. 14 – 16; Complaint,

5   paras. 13 – 20.)  However, even prior to Cook's resignation, Cook was deleting HSI's purchasing

6   icons, catalogs and business cards, and declaring that these customers would now be ordering

7   supplies from Patterson.  (Brown Dec., paras. 5-7.)  There can be no doubt that these sorts of

8   actions fall well short of "best efforts" to protect HSI's business relationships and reputation.

9   Because of Cook's numerous breaches of her agreements, HSI has suffered significant and

10  irreparable harm.  Thus, HSI has demonstrated that it is likely to prevail on its breach of contract

11  claim against Cook.

12      **F.   HSI is Likely to Suffer Irreparable Injury in the Absence of Immediate
             Injunctive Relief**

13

14          "In general, the imminent use of a trade secret constitutes irreparable harm."  *Gallagher*

15  *Benefits Servs., Inc. v. De La Torre*, No. C 07-5495 VRW, 2007 WL 4106821, at *5 (N.D. Cal.

16  Nov. 16, 2007), *order aff'd in part, vacated in part sub nom. Gallagher Benefit Servs., Inc. v. De*

17  *La Torre*, 283 F. App'x 543 (9th Cir. 2008) ("[T]he goodwill and customers that Gallagher would

18  lose absent equitable relief supports [the lower court's] finding of irreparable injury.").  "This is

19  particularly true when the trade secret is a customer list, for solicitation of plaintiff's customers by

20  defendants cannot be remedied by money damages alone."  *Gallagher*, 2007 WL 4106821, at *5

21  (citation omitted); *see also Stuhlbarg Int'l Sales Co., v. John D. Brush & Co.*, 240 F.3d 832, 841

22  (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly

23  supports a finding of the possibility of irreparable harm."); *Markovits v. Venture Info Capital, Inc.*,

24  129 F. Supp. 2d 647, 661 (S.D.N.Y. 2001) ("[The former employee's] continued use of [the

25  company's] confidential information, and [his] inevitable competition based thereon, will likely

26  cause serious damage to [the company's] reputation and client base…. The measure of this

27  damage is simply unquantifiable.").

28          Here, there can be no question that both the threatened damage and the damage already

10653.002 3464989v1                                 17

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

COBLENTZ PATCH DUFFY & BASS LLP

1   suffered by HSI is irreparable.  Cook's improper actions, including her aggressive solicitation for

2   Patterson during visits to the offices of HSI's customers while she was employed by HSI,

3   declaring that they would be purchasing supplies from Patterson, caused damage to HSI's

4   reputation, good will and business relationships.  Courts in the Ninth Circuit have often granted

5   the kind of injunctive relief requested here to prevent the very kind of irreparable injuries that will

6   be suffered by HSI but for the Court's intervention.  *See, e.g., TMX Funding, Inc. v. Impero*

7   *Techs., Inc.*, No. C. 10–00202 JF (PVT), 2010 WL 1028254, at *8 (N.D. Cal. Mar. 18, 2010)

8   (granting injunctive relief and noting that "California courts have presumed irreparable harm when

9   proprietary information is misappropriated."); *Lillge v. Verity*, No. C 07–2748, 2007 WL 2900568,

10  at *7 (N.D. Cal. Oct. 2, 2007) (granting injunctive relief and noting that when a plaintiff "risk[s] ...

11  losing established customers to defendants ... due to [the] defendants' improper use of [the]

12  plaintiff's proprietary information," there is "obviously ... a lasting, irreparable harm.").

13  **G.      The Balance of Hardships Strongly Favors HSI**

14          The balance of hardships in this case likewise compels the issuance of the requested

15  injunctive relief.  As described in the previous sections, HSI has suffered and will continue to

16  suffer irreparable harm if Cook is allowed to continue to try to divert its customers using HSI's

17  own confidential, proprietary, and trade secret documents and information.  By contrast, Cook will

18  suffer no undue hardship if injunctive relief is granted because the temporary restraining order and

19  preliminary injunction would not prohibit Cook from engaging in activity that is proper.

20          If the Court grants the requested relief, Cook can remain employed by Patterson, and can

21  continue to be engaged as a sales representative for Patterson, but restricted from the customers

22  she dealt with on behalf of HSI.  When the certainty of irreparable harm against HSI is weighed

23  against the absence of hardship to Cook if the requested injunctive relief is granted, the balance of

24  hardships weighs heavily in favor of HSI.

25  **H.      Granting the Requested Injunctive Relief Would Advance the Public Interest**

26          Finally, granting the requested injunctive relief would support the public's interests in

27  protecting trade secrets under the CUTSA and DTSA, preventing unfair and unlawful business

28  practices under the UCL, and upholding enforceable confidentiality and non-disclosure

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
MOTION FOR EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

agreements between employers and employees.  *See Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1520, 66 Cal. Rptr. 2d 731 (1997) (noting that protection of a company's trade secrets is "fundamental to the preservation of our free market economic system"); *Bank of Am., N.A. v. Lee*, No. CV 08-5546 CAS(JWJX), 2008 WL 4351348, at *7 (C.D. Cal. Sept. 22, 2008) ("While California has a strong public policy in favor of competition, this interest yields to California's interest in protecting a company's trade secrets."); Congressional Report 114-529, Defend Trade Secrets Act of 2016, at *6 (April 26, 2016) (noting that the DTSA equips businesses with "the tools they need to effectively protect their intellectual property and ensures continued growth and innovation in the American economy").

## I.   The Court Should Not Require A Bond

Federal Rule of Civil Procedure 65(c) vests the district court with discretion as to whether to require a bond, and if so, the amount of the bond required, if any.  *See Jorgansen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).  The district court may dispense with the filing of a bond, *id.*; *see also Gorbach v. Reno*, 219 F.3d 1087 (9th Cir. 2000), and a strong likelihood of success on the merits may also favor "a minimal bond or no bond at all".  *See California v. Tahoe Regional Planning Agency*, 766 F.2d 1319, 1326 (9th Cir. 1985).

The requested relief will cause no damage to Cook since she should never have stolen HSI's confidential, proprietary, and trade secret information in the first place, and she should not have solicited customers for Patterson while employed by HSI.  Compliance with her obligations under the DTSA, CUTSA, the UCL and with her contractual obligations, will cause her no harm. Further, under the Confidentiality and Letter Agreements (Exhibits 1 and 2 to the Complaint; *see* Showgren Dec., para. 16, Complaint, paras 13 – 20).  Cook explicitly agreed to allow HSI to seek injunctive relief "without any bond or other security being required….."  *See* Complaint, Ex. 1, Paragraph 5.  Therefore, not only is a bond unnecessary in this case, but Cook waived any bond under the express terms of her agreements.

## J.   The Court Should Include Document Preservation Orders in the Proposed Temporary Restraining Order

"[A] litigant … is under a duty to preserve what it knows, or reasonable should know, is

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800  •  Fax 415.989.1663

19

1   relevant in the action, is reasonable calculated to lead to the discovery of admissible evidence,

2   [and/or] is reasonable likely to be requested during discovery." *Wm. T. Thompson Co. v. General*

3   *Nutrition Corp.*, 592 F. Supp. 1443, 1455 (C.D. Cal. 1984).

4          In light of Cook's attempts to destroy evidence of her emails and misappropriation of

5   HSI's confidential, proprietary, and trade secret information (*see* Showgren Dec., para. 18), HSI

6   respectfully requests that the Court issue a document preservation order, putting Cook on express

7   notice of her obligations under the law to preserve evidence.  Courts in this district have issued

8   similar orders in granting temporary injunctive relief on trade secrets claims.  *See, e.g., KLA-*

9   *Tencor Corp. v. Murphy*, 717 F. Supp. 2d 895, 898 (N.D. Cal. 2010) (noting that the previously-

10  issued temporary restraining order prohibited the defendants from "destroying evidence and

11  requir[ed] defendants to preserve electronic evidence"); *Hertz Equip. Rental Co. v. Useda*, No.

12  CV10 4953, 2010 WL 11424123 (N.D. Cal. Nov. 2, 2010) (same).

13         Here, since Cook has already attempted to destroy key evidence, a document preservation

14  order is appropriate to ensure that Cook preserves all relevant evidence and is aware of the

15  possibility of sanctions should she fail to do so.  In light of her surreptitious and unlawful conduct

16  to date, HSI reasonably fears that Cook will continue to dispose of critical evidence absent timely

17  and clear direction to the contrary from the Court.

18  **II.     Limited Expedited Discovery is Necessary**

19         In advance of briefing and hearing on the preliminary injunction, HSI requests that this

20  Court grant HSI the opportunity to conduct specific, limited expedited discovery.  Federal courts

21  have the authority to permit expedited discovery, prior to a Rule 26(f) conference, upon a showing

22  of good cause.  *See* Fed. R. Civ. P. 26(d)(1); *Semitool, Inc., v. Tokyo Electron Am.*, 208 F.R.D.

23  273, 276 (N.D. Cal. 2002).  "Good cause may be found where the need for expedited discovery, in

24  consideration of the administration of justice, outweighs the prejudice to the responding party."

25  *Id*.  "[C]ourts have recognized that good cause is frequently found in cases involving claims of

26  infringement and unfair competition."  *Id*.

27         Here, HSI requests that the Court allow it to arrange for a forensics e-discovery expert, to

28  create a "clone" or mirror image of Cook's two personal email accounts, jenncook9@gmail.com

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800  •  Fax 415.989.1663
COBLENTZ PATCH DUFFY & BASS LLP

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND
MOTION FOR EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

and jennlcook@aol.com, as well as her iPad (which she used to log into HSI's system on May 14, 2016, after she resigned), her iPhone, personal computers, mobile devices (including phones and tablets), and any other computer drive, both local or stored in an offsite server (e.g., the "cloud") which are in Cook's possession or custody, or subject to her control, that was used to access or store, even temporarily, HSI's confidential, proprietary, or trade secret information.  HSI seeks an order directing the expert to hold, preserve and maintain, the data and images that it clones, pending further order of the court or agreement between the parties on a search protocol.  Absent such relief, Cook will be able to further delete the digital trail of her misconduct.

Similarly, HSI should be permitted to take expedited discovery of Cook and her current employer, Patterson, to determine whether, when and to what extent, Cook has provided or disclosed material to Patterson, or is otherwise using HSI's confidential, proprietary, or trade secret information in her new job at Patterson.

In sum, the circumstances of the instant Motion underscore the need for this limited expedited discovery, and, under similar facts, courts in the Ninth Circuit have granted the types of tailored discovery sought here.  *See, e.g., KLA-Tencor Corp. v. Murphy*, 717 F. Supp. 2d 895, 898 (N.D. Cal. 2010) (noting that the "court granted plaintiff leave to take expedited discovery, including oral depositions of the individual defendants" after issuing a temporary restraining order prohibiting the use or disclosure of trade secrets and prior to a preliminary injunction hearing on the same; *Grooms v. Legge*, No. 09CV489-IEG-POR, 2009 WL 704644, at *12 (S.D. Cal. Mar. 17, 2009) (granting the plaintiff's request for limited expedited discovery after issuing a temporary restraining order, but prior to a preliminary injunction hearing where the plaintiff expressed concerns that its "customer lists [would be] lost without discovery").  Any potential prejudice from this limited expedited discovery is minimal, not least because the "requested information is relevant and will be produced in the normal course of discovery."  *Semitool, Inc., v. Tokyo Electron Am.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).  Accordingly, HSI's request for expedited discovery should be granted.

## CONCLUSION

The requested equitable relief in this case is necessary to put an immediate end to Cook's

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

1  ongoing misconduct and threats of future misconduct, which threaten irreparable injury to HSI.

2  Accordingly, and for the preceding reasons, HSI respectfully requests that the Court grant the

3  Application in its entirety.

4

5  DATED:  June 9, 2016                    COBLENTZ PATCH DUFFY & BASS LLP

6

7                                          By:    /s/ Jeffrey G. Knowles

8                                                 Jeffrey G. Knowles
                                                  Attorneys for Plaintiff Henry Schein, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**