JEFFREY G. KNOWLES (State Bar No. 129754)
ANDREW SCHALKWYK (State Bar No. 287170)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone: 415.391.4800
Facsimile: 415.989.1663
Email:   ef-jgk@cpdb.com,
         ef-aps@cpdb.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| HENRY SCHEIN, INC.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>JENNIFER COOK,<br><br>　　　　　Defendant. | Case No.<br><br>**DECLARATION OF GLENN SHOWGREN IN SUPPORT OF PLAINTIFF HENRY SCHEIN, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER; MOTION FOR EXPEDITED DISCOVERY; AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>Trial Date:　　None Set |

1   I, Glenn Showgren, declare as follows:

2   1.  I am the Zone General Manager for California and Hawaii, of Henry Schein Dental ("HSD"), a division of Henry Schein, Inc. ("HSI," the "Company" or "Plaintiff"). I have personal knowledge of the facts as set forth herein, or, where indicated below, I believe those facts to be true based on information in the files of HSI, and/or provided to me by others. I submit this declaration in support of HSI's motion (the "Motion") seeking immediate relief.

3   2.  HSI is in the business of marketing, distributing and selling medical, dental and veterinary supplies and equipment, and other healthcare products, to medical, dental and veterinary practitioners, and other healthcare professionals and organizations. Defendant Jennifer Cook ("Cook") was employed by HSI as a Field Sales Consultant ("FSC"), assigned and working for HSD. I was Cook's Zone General Manager when she resigned on May 13, 2016, and for approximately two years prior to that time.

4   3.  Defendant Cook's job was to project, increase and promote the Company's good will with existing and prospective customers, and to service, solicit and sell to, the customers and prospective customers assigned to her by HSI. Unbeknownst to us at HSI, while Cook was employed by the Company, and supposedly doing her job, Cook secretly misappropriated HSI's confidential, proprietary, and trade secret documents and information, and attempted to divert customers to a competitor, Patterson Dental ("Patterson"), where she has become employed.

5   4.  Defendant resigned from Plaintiff's employ at the close of business on May 13, 2016. As described below, prior to her resignation: Plaintiff secretly downloaded, and emailed to her personal "aol" or "gmail" email accounts, HSI's trade secrets -- including extensive, confidential data and records which had been developed, compiled, analyzed and generated by HSI, concerning customers assigned to Cook by HSI. She also attempted to delete from her Henry Schein email account, the emails she sent to her personal "aol" and "gmail" accounts, in which she forwarded substantial confidential trade secret information.

6   5.  Cook's attempts failed. She did not effectively delete these emails. Had these attempts been effective, they would have concealed this conduct.

6. In addition, I am advised that prior to resigning, Defendant visited the offices of certain customers with whom she dealt on behalf of HSI, deleted the HSI product ordering icons from the customers' computers, threw away HSI catalogues and representatives' business cards, and told the customers that they were moving to Patterson with her.

7. Cook's actions interfered with HSI's relationships with its customers, and threaten HSI with irreparable harm to its relationships and good will with customers, relationships that HSI has built up over the years. Cook's actions also threaten to reveal and misappropriate for a competitor, HSI's confidential, trade secret data and information, in which HSI has invested heavily, and which HSI has made great effort to keep confidential.

8. Given Cook's cavalier attitude and complete disregard for her obligations to HSI, and given her actual destruction of the emails from her Henry Schein email account, there is great risk that Cook will destroy additional evidence and will continue to use HSI's information to further her own interests and the interests of HSI's competitors.

9. Accordingly, HSI urgently seeks immediate injunctive relief, directing the immediate imaging of Cook's mobile devices and computers, and restraining her from dealing with, selling to, benefitting from or accepting business from, any of the customers assigned to her while she was employed by HSI.

**Company Trade Secrets and Confidential Information**

10. Cook, as an FSC working for the Company, had access to very substantial amounts of confidential HSI information related to HSI's customers, products, margins, profit percentages and markets, and particularly concerning those customers assigned to her. HSI, as part of doing business, generates, develops, compiles and analyzes, substantial confidential information concerning each customer, including their preferences, buying patterns, invoices and pricing, credit profiles, margins, gross profits, products selected, customer practices, sales plans, and the exact amount and type of business transactions with each customer. HSI also generates, compiles and analyzes data relating to each product it sells. HSI then makes this information readily available to its FSCs through proprietary tools, to enable them to effectively utilize the information to service customers and address customer needs. HSI has made a significant effort to

1  develop this information and these resources, and to make the information and tools available for
2  its sales force.  This confidential data and the proprietary analytical tools provide curated insights
3  on how HSD does business, and provide data analytics of all sales to every customer and of every
4  product sold.  This information is not known to HSI's competitors, and is valuable to HSI for that
5  reason. The information and analysis is our trade secret. If competitors had this information, they
6  could attempt to undercut HSI's selling efforts by using HSI's own information against us.

7      11.    The FSCs obtain this confidential HSI information by logging into the HSI
8  computer system with their Company laptops and using a computer program called "FSC", or
9  another proprietary program, which "updates" or "syncs" the data on their laptops, to the current
10 data on the Company's main computers.  This results in the FSC then receiving on their laptop,
11 very substantial amounts of the Company's most current and up to date confidential information
12 concerning the customers assigned to that FSC, and their specific ordering and purchasing.

13     12.    In addition to the data provided through the FSC program, HSI has web-accessible
14 programs or "apps" through which an FSC, after logging into a secure portal with confidential
15 Company credentials, can receive HSI's confidential customer and product-related information
16 and analysis for the customers assigned to them, in additional formats, by use of a tablet or smart
17 phone.  An FSC can thus obtain, for example, comprehensive "360 Reports" on customers' history
18 and relationships with HSI, including products, pricing, margins, customer preferences, gross
19 profit, gross profit percentages and variances.  An FSC can also obtain "drill down" reports, which
20 provide detailed information on specific aspects of a customer's business with the Company.  The
21 web-based program has the added feature of allowing FSCs to "export" reports reviewed in the
22 program, and to drop the substantial confidential Company data into a "csv" computer file format,
23 which permits analysis of the data through use of other programs.

24     13.    All of this information is valuable and confidential HSI information, is available to
25 the FSCs solely by virtue of their employment with HSI, and is not available to competitors or
26 others.  HSI spent substantial amounts of time, energy and money to compile, develop, analyze,
27 create and process this data and information, to develop the analytical programs, and to make this
28 material readily accessible to FSCs for use with customers.  FSCs thus have access to very large

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800  •  Fax 415.989.1663

amounts of the Company's confidential data and analysis pertaining to the customers. This data and information has significant economic value to the Company, because it is effective and others do not have it.

**Significant Steps Taken to Protect HSI Information**

14. HSI has taken significant steps to protect this confidential and proprietary information. HSI employees are able to gain access to HSI's confidential information only through password-protected programs and entry points, and FSCs cannot, absent special approval, access individual data about individual customers, other than those assigned to them. HSI maintains business standards that provide:

> All Company records and information relating to the Company and its customers and suppliers as well as Team Schein Members are confidential. All Team Schein Members have an obligation not to disclose any of Henry Schein's sensitive and confidential information to anyone outside the Company and to use such information only in connection with the Company's business. Company-owned information (which is all data, including intellectual property, in any form, which has either been created using Henry Schein's resources or legally acquired by Henry Schein from third parties) is considered an asset and as such, whenever and wherever it is handled or stored, it requires protection from unauthorized access, modification, disclosure, use and destruction.

I am advised that by agreement of May 6, 2005, Cook expressly agreed to comply with these standards.

15. In addition, all FSCs enter into agreements with HSI, under which they agree to protect this confidential information and not to use the information for their own benefit or for HSI's competitors. Under the agreements, FSCs are obligated to "hold in strictest confidence any and all confidential information within her knowledge . . . concerning HSD, and/or concerning the products, processes, services, business, suppliers and customers of HSD", and, upon separation from the Company, to return "…all notebooks, memoranda, personal notes, software, hardware,

1  other documents, discs, tapes, material or property of the Company and all other confidential
2  information, and all copies thereof, which are in [her] possession…".
3      16.    I am advised that Cook entered three separate agreements with HSI, under which
4  she is obligated: to maintain the confidentiality of HSI's confidential information; not to use the
5  information on her own behalf or on behalf of anyone other than HSI; and to return to HSI, its
6  property and confidential information upon her separation from the Company. I am advised that
7  the agreements that Cook entered into with HSI are quoted in paragraphs 13 – 20 of the
8  Complaint, and that two of Cook's agreements are annexed to the Complaint as exhibits.

**Cook's Misconduct**

10     17.    Cook resigned from her employment at HSI at the close of business on Friday, May
11 13, 2016. Unbeknownst to us, prior to her resignation, Cook secretly took the Company's
12 confidential, trade secret documents and information. For example, our eCommerce group found
13 that Cook connected her "FSC" program to the Company's servers on May 13, 2016, the day she
14 resigned. Connecting to the Company's servers in that fashion causes the "FSC" program to
15 "update" or "sync" on the laptop, and to provide HSI's up to date, confidential ordering and sales-
16 related information, current through May 13, 2016, for all of HSI customers assigned to that FSC.
17 Since Cook was quitting that day, Cook didn't need to obtain any of that information.

18     18.    In addition, we found that, prior to her resignation, Cook was secretly sending
19 emails containing HSI's trade secrets from her Company email account, to what appear to be her
20 personal email accounts. Then she apparently attempted to hide her activity by deleting these
21 emails from her HSI account. After Cook resigned from the Company, we reviewed her Henry
22 Schein email account and the Company email system, including these emails that had been
23 designated for deletion but which had not yet been deleted; this review showed the following
24 shocking conduct, among others:

25         (a)    On Tuesday, May 10, 2016, three days before Cook resigned, an email was
26 sent from Cook's Henry Schein email account, to an account bearing the email address
27 "jenncook9@gmail.com"; the email forwarded several extensive, detailed, confidential and
28 proprietary Henry Schein Practice Analysis Reports ("Practice Reports"), each of which is marked

1  "CONFIDENTIAL". These include Henry Schein Practice Analysis Reports for five HSI
2  customers, each of whom has a dental practice. For one customer, reports from both 2014 and
3  2015 were attached to an email from Cook's Henry Schein account to "jenncook9@gmail.com".
4  Not only is each Practice Report marked "CONFIDENTIAL", but each Practice Report contains
5  numerous individual reports, each of which is also marked "confidential" on every page. These
6  reports analyze many aspects of each doctor's practice. After these emails were sent from Cook's
7  Henry Schein email account on May 10, 2016, the "sent" email was deleted from her Henry
8  Schein mailbox file.
9         (b)    On May 12, 2016, the day before Cook resigned from HSI, an email was
10 sent from her Henry Schein account to an account with the address jennlcook@aol.com; the email
11 forwarded a copy of an equipment inventory list prepared by HSI for a customer; the email
12 indicates that it was an HSI document Cook had previously obtained from another employee at
13 HSI. After this email was sent from Cook's Henry Schein email account, the "sent" email was
14 deleted from her Henry Schein mailbox file.
15        (c)    On May 12, 2016, the day before Cook resigned from HSI, an email was
16 sent from Cook's Henry Schein email account to an account with the address jennlcook@aol.com;
17 the email forwarded a product quote and Dental Equipment and Technology Proposal that had
18 been prepared by HSI for a customer, and which contained information and a confidential price
19 quote. After this email was sent from Cook's Henry Schein email account, the "sent" email was
20 deleted from her Henry Schein mailbox file.
21        (d)    On May 12, 2016, the day before Cook resigned from HSI, an email was
22 sent from her Henry Schein email account to an account with the address jennlcook@aol.com; the
23 email forwarded an HSI equipment list, configurations and HSI price quotations (bid) for a new
24 clinic that HSI was working to set up with a customer. After this email was sent from Cook's
25 Henry Schein email account, the "sent" email was deleted from her Henry Schein mailbox file.
26        (e)    On May 12, 2016, the day before Cook resigned from HSI, an email was
27 sent from her Henry Schein email account to an account with the address jennlcook@aol.com; the
28 email forwarded maintenance records and approximately two years' worth of HSI invoices for one

1  of Plaintiff's customers. After this email was sent from Cook's Henry Schein email account, the
2  "sent" email was deleted from her Henry Schein mailbox file.

3      (f)  On May 12, 2016, the day before Cook resigned from HSI, an email was sent from Cook's Henry Schein email account to an account with the address jennlcook@aol.com; this email forwarded detailed Dental Technology and Equipment Proposals prepared by HSI for a customer, proposals which contained HSI's confidential price quote for two different configurations of equipment. After this email was sent from Cook's Henry Schein email account, the "sent" email was deleted from her Henry Schein mailbox file.

19.  All of these documents, which were emailed from Cook's Henry Schein email account to what appear to be personal email accounts, were the property of HSI; all contain confidential HSI business information and were taken from the internal documents of HSI, documents that are available only to HSI employees in the proper conduct of HSI business.

20.  In addition, on May 11, 2016, just two days before she resigned, I am advised that Cook logged in to one of HSI's web-based apps for FSCs, and "exported" ten reports from Plaintiff's web based program, to Cook's device, including a "360 Report" and four (4) client "drill down" reports. A "360 Report" contains essentially all of the information that HSI has relevant to an account, including purchasing histories, pricing, margins, gross profit, gross profit percentages and variances, customer product preferences, analyses, and nearly all other data and information HSI has developed, compiled, or analyzed regarding the customer. The "drill down" reports are reports which provide detailed information on an aspect of a customer relationship, and include substantial confidential HSI information on a specific aspect of the customer's purchasing and preferences. All of these reports contain confidential HSI information, not known to HSI's competitors, and have value because the information is not known to others. All of these reports and the information in the reports were to be utilized only in the good faith conduct of HSI's business.

21.  To put the May 11 "export" of ten reports from the HSI web-based app in context, during the entire period from January 1, 2016, through April 30, 2016, I am advised that Cook exported a total of sixteen (16) reports. Yet, on May 11, 2016, two days before she resigned,

1  Defendant exported a total of ten (10) new reports from the HSI system to her device, including
2  the most comprehensive 360 Report.
3      22.    On Saturday, May 14, 2016, the day after she resigned, I am advised that HSI's
4  computer records show that Cook again accessed the HSI computer system, this time using a web
5  based "iPad app" that only employees are allowed to use. At this time, Cook was no longer
6  employed by HSI, and her access of the HSI computer system was improper. Use of the iPad app
7  in this fashion would result in downloading very substantial amounts of HSI's current data and
8  records, for the HSI customers assigned to the FSC.
9      23.    The information contained in all of these reports, the information which Cook
10 obtained by "updating" or "syncing" her FSC program, and the information obtained through the
11 "iPad app", is for use in HSI's efforts in selling to and servicing customers. This is the
12 Company's confidential information that is supposed to facilitate sales and service to the
13 customers. Since Cook was quitting on May 13, 2016, I believe that she obtained this data and
14 these reports to take with her in order to use HSI's confidential information to help her sell on
15 behalf of Patterson to the detriment of HSI. I believe that Cook exported these reports to
16 misappropriate to herself and to Patterson the trade secrets therein, to use in attempting to divert
17 the customers from HSI to Patterson. I also note that Cook failed and refused to return her laptop
18 to HSI, for two full weeks after she resigned, despite repeated demands from HSI.

**Cook Attempted to Divert HSI's Customers While Employed by HSI**

20     24.    In addition to taking our trade secret information as described above, I am advised
21 by our telesales representative, who has spoken to the customers, that, prior to resigning from HSI
22 on May 13, 2016, Cook visited the offices of certain customers, and deleted the HSI product
23 ordering icons from the customers' computers, threw away all HSI catalogues and HSI business
24 cards, and told the customers that they were moving to Patterson with her. I am further advised
25 that several customers were left without an easy means to contact HSI for product orders and
26 assistance.

**Need for Immediate Relief**

25. These actions by Cook threaten HSI with irreparable harm to its customer relationships and good will. Cook's conduct in repeatedly taking HSI's confidential, trade secret information, and her effort to conceal this conduct by using personal email accounts, and by deleting the incriminating emails from her Henry Schein account, compels the conclusion that she was trying to misappropriate HSI's trade secrets and to conceal her actions.

26. Cook has shown a blatant disregard and a cavalier attitude toward her obligations to HSI. Her actual deletion of emails from her Henry Schein email account, indicates that Cook will attempt to destroy evidence and will continue to attempt to use HSI's information to further her own interests.

27. Accordingly, HSI urgently seeks injunctive relief: directing the immediate imaging and preservation of Cook's mobile devices, computers and commercial email accounts, and restraining her from dealing with, selling to, benefitting from or accepting business from, any of the customers who were assigned to her while she was employed by HSI.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed June 8, 2016, at Rocklin, CA


Glenn Showgren